STATE ROAD DEPARTMENT OF FLORIDA, a Corporation, *et al.,*
v. J. V. THARP.

1 So. (2nd) 868
En Banc
Opinion Filed April 25, 1941
Rehearing Denied May 19, 1941

746

T. M. Shackleford, Jr., for Appellants;

James N. Daniel, for Appellee.

TERRELL, J.—The facts in this case are simple but they are laden with a live question. Appellee owned a water mill on Hard Labor Creek in Washington County which he and his predecessors in title had been operating as a sawmill, grist mill, or shingle mill for more than seventy years. It was propelled by water impounded in a mill pond by erecting a dam across the creek to the east of the mill.

When the water left the millrace, it flowed through a swamp area in five channels. At a point four or five hundred feet west of the mill, the State Road Department erected a bridge and fill aggregating 640 feet in length. The fill completely obstructed four of the channels, the result being to raise the elevation of the water in the millrace at least three feet, reducing the capacity of the mill fifty per cent.

Appellee as complainant filed his bill of complaint against the appellants as defendants alleging the foregoing facts and that he repeatedly protested the building and maintenance of the fill, that it amounted to the taking of his property for the benefit of the public without due process, that such taking constituted a continual trespass and an irreparable injury to the plaintiff, that he is prohibited from maintaining an action at law to recover damages against the State Road Department and that his only relief is in equity. The bill prayed for an injunction against continuing the trespass and to require removal of the fill in so far as it obstructed the channels to the creek. In lieu of the latter, the defendant was granted the privilege of exercising the right of eminent domain as a means of making restitution to the plaintiff. A motion to dismiss was denied and on final hearing the chancellor granted the relief prayed for. This appeal is from the final decree.

The sole question presented is whether or not this is a suit against the State as contemplated by and authorized pursuant to Section 22, Article III, of the Constitution of Florida.

The doctrine of the non-suability of the State rests on public policy and should be liberally construed to effectuate the purpose for which it was designed. If the State could be sued at the instance of every citizen, the public service would be disrupted and the administration of government

would be bottlenecked. Section 2, Article III, of the Federal Constitution limits the rule slightly but otherwise the State cannot be sued without its consent. As to tort actions, the rule is universal and unqualified unless relaxed by the State, but in other fields, it is not universal in application and cannot be said to cover the field like the "dew covers Dixie."

Immunity of the State from suit does not afford relief against an unconstitutional statute or against a duty imposed on a State officer by statute, nor does it afford a State officer relief for trespassing on the rights of an individual even if he assumes to act under legal authority. It will not relieve the State against any illegal act or for depriving a citizen of his property; neither will it be permitted as a plea to defeat the recovery of land or other property wrongfully taken by the State through its officers and held in the name of the State. It will not be permitted as a city of refuge for a State agency which appropriates private property before the value has been fixed and paid.

Section 22 of Article III of the Constitution authorizes provision by general law for bringing suit against the State for all liabilities now or hereafter existing but it has no application to the case at bar and if it did, it should be read in connection with Section 4 of the Bill of Rights providing that all courts be open in order that every person may seek redress for injury done to his lands, goods, person, or reputation.

Here we have a case in which complainant's millrace was flooded and the efficiency of his water mill reduced fifty per cent by the act of a State agency. The millrace with the water from the millpond is to the water mill what the dynamo is to the machine driven by electricity or the engine is to the machine driven by steam. It is the power that drives the water mill and it is property protected by the

Bill of Rights. True it is a species of property like the horse and buggy, gradually approaching extinction, but so long as, as in this case, it affords subsistence for man and beast, it must be protected.

If a State agency can deliberately trespass on and destroy the property of the citizen in the manner shown to have been done here and then be relieved from making restitution on the plea of non-liability of the State for suit, then the constitutional guaranty of the right to own and dispose of property becomes nothing more than the tinkling of empty words. Such a holding would raise administrative boards above the law and clothe them with an air of megalomania that would eternally jeopardize the property right of the citizens. It would reverse the order of democracy in this country and head it into a blind alley.

American democracy is a distinct departure from other democracies in that we place the emphasis on the individual and protect him in his personal property rights against the State and all other assailants. The State may condemn his property for public use and pay a just compensation for it but it will not be permitted to grab or take it by force and the doctrine of non-suability should not be so construed. Forceful taking is abhorrent to every democratic impulse and alien to our political concepts.

If American democracy survives and lives up to the function of its creation, it must do so by adherence to the code of moral and legal conduct promulgated by the Constitution, one provision of which is the sanctity of private property. No principle has contributed more to the material development of the country or done more to stabilize and balance its citizenship. To be a property owner and a taxpayer is one of the surest incentives to a dependable citizenship. It gives the citizen a stake in his government second to no other influence. It is one of the first duties

of constitutional government to protect and where the sovereign has a right to condemn for public use, it will not be permitted to appropriate except by orderly processes. The current of the law on this point will not lead to any other conclusion.

Supporting this thesis, Section 12 of the Declaration of .Rights provides that no person shall be deprived of his property without just compensation and Section . 29 of Article XVI of the Constitution contains a similar specification with reference to corporations and individuals for the preservation of property rights. The latter provision is mandatory that the compensation be made before the property is . appropriated.

Sections 2288 to 2293, Compiled General Laws of 1927, makes provision for the right of condemnation when .the interest of the public requires the appropriation of private property, and Section 1645, Compiled General Laws of 1927, makes that right applicable to the State Road Department and declares it "to be a body corporate" for the purpose of condemnation and extended the right to lands, materials, and other property necessary for road purposes. In Spafford v. Brevard County, *et al.,* 92 Fla. 617, 110 So. 451, this Court held unconstitutional an Act authorizing the State Road Department to take possession of private property before the value had been fixed and paid.

In addition to the last cited case, Kaufman v. Lee, 106 U. S. 106, 1 Sup. Ct. 240, 27 L. Ed. 171; Hopkins v. Clemson Agricultural College, 221 U. S. 636, 31 Sup. Ct. 654, 55 L. Ed. 890; Little Tarkio Drainage District Number One v. Richardson, 237 Mo. 49, 139 S. W. 576; Bruntmeyer v. Squaw Creek Drainage District Number One, 196 Mo. App. 360, 194 S. W. 748, and Reconstruction Finance .Corp. v. Manihan Corp., *et al.,* decided Feb. 3, 1941, not yet reported, leave no doubt that suits of this kind may

be maintained against a State agency. But even if on any theory this could be construed as a traditional suit against the State, the damage constituted an implied contract to pay and would be covered by Chapter 15022, Acts of 1931, authorizing suits on contract against the State Road Department. The statute and the Constitution chart a course in cases like this as evident as the rouge on a flapper's face, so it's no answer to contend that dire consequences will follow if the clear mandate of the law is not ignored.

There is no theory in right and justice why the judgment below should not be affirmed. In the administration of constitutional guaranties, the State cannot afford to be other than square and generous. To deprive the citizen of his property by other than legal processes and depend on escape from the consequences under cover of the plea of non-suability of the State is too anomalous and out of step with the spirit and letter of the law to claim protection under the Constitution. As an anomaly, it is comparable to the classic instance in the civil law of the husband who sought a divorce from his wife on the grounds of adultery and predicated his charge on the fact that a rich merchant bequeathed her a legacy as a tribute to her virtue.

For the reasons stated, the decree appealed from is affirmed.

BROWN, C. J., WHITFIELD, BUFORD, CHAPMAN and THOMAS, J. J., concur.