## Richmond

ELOISE J. WHITE, ET AL. v. STATE HIGHWAY COMMISSIONER OF
VIRGINIA.

June 13, 1960.

Record No. 5088.

Present, All the Justices.

The opinion states the case.

*Willard P. McBain*, for the appellants.

*M. Ray Johnston, Assistant Attorney General* (*A. S. Harrison, Jr.,
Attorney General; Francis C. Lee, Assistant Attorney General,* on
brief), for the appellee.

EGGLESTON, C. J., delivered the opinion of the court.

This is a condemnation proceeding by the State Highway Com-
missioner to acquire title to certain land in Princess Anne County
owned by Eloise J. White and Ida N. Jacox. The sole question pre-

sented to us is whether the lower court properly held that the value of the land should be determined as of the time the Commissioner took physical possession of it, on June 15, 1943, and began the construction of the road thereon. The property owners contend that the value should be determined as of August 22, 1958, when, in anticipation of the condemnation proceeding, the Commissioner recorded in the clerk's office the certificate authorized by Code, 1958 Cum. Supp. § 33-70.1, *etc.*

The facts under which the question arose are not disputed. During the years 1942 and 1943 the Commissioner constructed Route 165, generally known as the Military Highway, running through a portion of Norfolk and Princess Anne Counties. On June 15, 1943, the Commissioner entered into possession of two unimproved lots, numbers 4 and 5 in block H, on the plat of the Norfolk and Ocean View Home Corporation, recorded in the Clerk's Office of the Circuit Court of Norfolk County, and thereafter constructed the roadway across them.

By deed dated October 8, 1946, and recorded in the Clerk's Office of the Circuit Court of Norfolk County, the Will Cooke Corporation purported to convey to the Commonwealth of Virginia, with general warranty, among others, the two lots on which the highway had been constructed. At the time of this conveyance these lots were not owned by the grantor, but were owned by Eloise J. White and Ida N. Jacox who had inherited them from their mother, Caroline Jacox, who in turn had acquired them by deed dated July 23, 1915, and duly recorded in the Clerk's Office of the Circuit Court of Norfolk County on December 2, 1916. After it had been later ascertained that the land in controversy is in Princess Anne County, this deed was also recorded in the clerk's office of that county.

In December, 1957, some fourteen years after the highway had been completed, the present owners of the property discovered and brought to the attention of the Commissioner the fact that the road had been built on a portion of their property without their knowledge or consent. Being unable to agree with the owners as to the value of their property, the Commisioner, pursuant to Code, 1958 Cum. Supp., § 33-70.1, *etc.*, filed and recorded in the Clerk's Office of the Circuit Court of Princess Anne County, on August 22, 1958, a certificate stating that on the order of the court he would pay the sum of $335 for the property. On September 10 the present condemnation proceeding to acquire fee simple title to the property was instituted.

After commissioners had been appointed to determine the value of the property they were instructed, over the objection of the property owners, to fix the award for "the value of the land taken and the damage, if any, to the residue of the land of the defendants beyond the enhancement in value of the remaining land, if any, as of June 15, 1943." Upon hearing the evidence and viewing the property, the commissioners fixed the value of the property taken at $300, and disallowed any damages to the residue.

The property owners excepted to the report of the commissioners on the ground that the value of the land should be fixed as of August 22, 1958, at which time the certificate of deposit was recorded. From an order overruling this exception and entering judgment on the award, the property owners have appealed.

At the outset we observe that this is not a tort action by the owners against the Commissioner to recover damages for the wrongful taking of their property in 1943. It is a condemnation proceeding in which the Commissioner seeks to obtain title to the property in the name of the Commonwealth, and the determination of the question before us must be settled by principles applicable to the latter proceeding. Hence, we put aside the argument of the Attorney General that because the owners were deprived of their property in 1943 their damages should be fixed as of that time.

The general and well-established rule which is followed in this State is that compensation for the taking of property for public use must be determined as of the time of the taking. 18 Am. Jur., Eminent Domain, § 263, p. 903; 29 C. J. S., Eminent Domain, § 185, p. 1068; *Appalachian Power Co.* v. *Johnson*, 137 Va. 12, 26, 119 S. E. 253; *Appalachian Electric Power Co.* v. *Gorman*, 191 Va. 344, 353, 61 S. E. 2d 33, 37.

The parties here agree upon this principle, but disagree as to what is the time of the taking. The lower court sustained the contention of the Commissioner that the time of the taking was on June 15, 1943, when he took physical possession of the property and began the construction of the roadway across it. On the other hand, the property owners contend that the occupation of their property by the Commissioner on that date was illegal and without authority and that the correct time of the taking, as of which the property should be valued, was August 22, 1958, when the Commissioner recorded the certificate in the clerk's office, at which time, upon the authority of Code, 1958

Cum. Supp., § 33-70.4, the title to the property vested in the Commonwealth.

In 18 Am. Jur., Eminent Domain, § 132, p. 756, "Taking" under the power of eminent domain is defined as "entering upon private property for more than a momentary period and, under the warrant or color of legal authority, devoting it to a public use, or otherwise informally appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof." This definition was approved and adopted in *Penn* v. *Carolina Virginia Coastal Corp.*, 231 N. C. 481, 57 S. E. 2d 817, 819. The Attorney General, relying upon this definition, claims that the Commissioner entered into possession of the property "under color of title" and devoted it to public use in June, 1943. Hence, he says, the property should be valued as of that time.

The trouble with this contention is that there is no showing in the record that the Commissioner took possession of the property "under the warrant or color of legal authority" in June, 1943. Not until October 8, 1946, or more than three years after the road had been completed, did he obtain the purported deed to the property from the Will Cooke Corporation. The record is silent as to what negotiations, if any, the Commissioner had had in the meantime with the Will Cooke Corporation, or any other purported owner, for acquisition and possession of the property.

But aside from this, so far as the appellants, the real owners of the property, are concerned, the entry of the Commissioner on their land in 1943 was unauthorized and unlawful. Pursuant to the statute then in effect, the Commissioner might have instituted condemnation proceedings and immediately obtained title to the property. (Michie's Code of 1942, § 1969j(4).) Had he done so, this would have been a lawful taking. But that course was not followed.

We hold that the time of taking, with reference to which compensation is to be made, means the time at which the property is taken lawfully by appropriate legal proceedings. Conversely, it does not mean the time at which the property is taken unlawfully and without legal authority, as was done in this instance.

The great weight of authority supports this view. As is said in Nichols on Eminent Domain, 3d Ed., Vol. 3, § 8.5[3], p. 26, "The rule that damages are to be assessed as of the date of the taking does not contemplate a physical taking not sanctioned by law, but a taking by appropriate legal proceedings; and consequently, if a corporation

invested with the power of eminent domain takes possession of private property in advance of condemnation proceedings, it cannot insist that the compensation awarded in the condemnation proceedings be fixed as of the date of the unlawful entry, instead of the date which the law of the state ordinarily prescribes." To the same effect see, 29 C. J. S., Eminent Domain, § 185-e, p. 1072; 20 C. J., Eminent Domain, § 266-e, pp. 831-2. These texts are supported by numerous cases. See also, *Anderson* v. *Port of Seattle*, 49 Wash. 2d 528, 304 P. 2d 705, 707; *Koerber* v. *City of New Orleans*, 228 La. 903, 84 So. 2d 454.

To support its holding that the time of taking was the time the Commissioner took physical possession of the property, the lower court in its written opinion cited *11,000 Acres of Land, etc.* v. *United States*, C. A. 5, 152 F. 2d 566, and *Anderson* v. *United States*, C. A. 5, 179 F. 2d 281. In each of these cases the taking was pursuant to lawful authority and in an appropriate legal proceeding. The same is true of *United States* v. *Dow*, 357 U. S. 17, 78 S. Ct. 1039, 2 L. ed. 2d 1109, relied on by the Attorney General.

The lower court also relied upon *United States* v. *Miller*, 317 U. S. 369, 63 S. Ct. 276, 87 L. ed. 336. In that case a public project contemplated the taking of several tracts of land, only one of which was taken in the first instance. When the government instituted condemnation proceedings to acquire the other tracts it was held that the owners of these latter tracts were not entitled to show the increased value of their respective properties resulting from the public improvement. No question of the time of taking was there involved.

The Attorney General argues that "to allow the date of evaluation to be some fourteen years after the taking of possession would work an injustice" on the Commonwealth. The ready reply is that this could have been avoided by the condemnation of the property at the time it was taken in possession.

We agree with the contention of the appellants that the value of their property should be determined as of August 22, 1958, when, in anticipation of the condemnation proceeding, the Commissioner filed in the clerk's office the certificate required by Code, 1958 Cum. Supp. § 33-70.1, *etc.* Accordingly, the order appealed from is reversed, the award set aside, and the case remanded for further proceedings in conformity with this opinion.

*Reversed and remanded.*