## PITZ v. STATE ROAD DEPARTMENT.
No. 65-C-12686.

Circuit Court, Dade County.

November 18, 1966.

Brigham & Brigham, Toby Price Brigham, of counsel, Miami, for the plaintiffs Pitz and Goodman.

Jack W. Pierce, Tallahassee, for the State Road Department.

RAYMOND G. NATHAN, Circuit Judge.

*Opinion of the court and final decree:* The above styled causes, having been consolidated for the purpose of trial, after due notice came on for final hearing commencing September 14, 1966, and continuing on October 7, 1966, at which time the testimony and evidence of the respective parties was concluded and the court heard extensive argument by their counsel of record with their numerous citations of authority.

Having heard and considered all of the testimony and other evidence adduced at the final hearing, as well as the thorough argument and citations of authority by counsel for the parties, and being fully advised in the premises, the court enters this opinion and final decree in the above styled causes.

The court finds that it has jurisdiction over the parties and the subject matter of the above styled causes of action. In both cases the pleadings, together with all of the testimony and evidence adduced, pose the question for decision, whether or not the respective plaintiffs have had property taken from them without just compensation by the state road department for which they are entitled to relief under the following constitutional provisions —

Section 12, Declaration of Rights of the Florida Constitution — "No person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken without just compensation."

Fourteenth amendment to the Constitution of the United States — ". . . nor shall private property be taken for public use without just compensation."

This court is also aware of the provisions of section 4 of the Declaration of Rights of the Florida Constitution, providing, in pertinent part —

"All courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay."

The court finds that in the cause of John G. Pitz v. State Road Department, circuit court no. 65C-12686, Pitz was and is the owner of the fee simple title in and to lots 1, 2 and 3, less the south 10 feet thereof, and all of lot 5 of Dorn's resubdivision of lots 18, 19 and 20 of block 67 north of the city of Miami, according to the plat thereof recorded in plat book 1, at page 21, of the public records of Dade County, hereinafter referred to as the Pitz property, located at the northwest corner of the intersection of N.W. 5th Street and N.W. 3rd Avenue in Miami; that the Pitz property is improved with a gasoline filling station, automotive repair garage, and a large billboard-type advertising sign; that said improved property was commercially rented and rentable for the purposes served by the building improvements described above, prior to the activities and procedures of the state road department, of which the plaintiff complains; and that the plaintiff Pitz did not and does not occupy said property himself, but has held and used the property solely for its rental income at all times pertinent to this case.

The court finds that in the cause of Elizabeth Goodman, individually and as administratrix of the estate of Samuel Goodman, deceased v. State Road Department, circuit court no. 65C-12685,

the plaintiff Elizabeth Goodman, a widow, as executrix of the estate of her deceased husband, was and is the owner of the fee simple title in and to lots 1 and 2 of Dorn's subdivision of the north one-half of block 67 north of the city of Miami, according to the plat thereof recorded in plat book "B", at page 92, of the public records of Dade County, located at the southwest corner of the intersection of N.W. 6th Street and N.W. 3rd Avenue in Miami; that said property, hereinafter referred to as the Goodman property, is improved with two residential duplexes and a one-story C.B.S. commercial store building containing a grocery store and tavern; that the Goodman property was rented and rentable for the purposes served by the building improvements described above prior to the activities and procedures of the state road department, of which the plaintiff complains; and that the plaintiff Elizabeth Goodman did not and does not occupy said property herself, but has held and used the property solely for its rental income at all times pertinent to this case.

All of the evidence and testimony in the above styled causes shows, and the court so finds, that commencing on or about September of 1963, the defendant state road department began a program of activities, procedures and practices in connection with acquisition and construction of right of way, pursuant to the requirements and policies of the bureau of public roads, U. S. Department of Commerce, and of its own, for a part of a federal interstate highway, locally known as I-95, or the north-south expressway in the city of Miami, within which right of way area the plaintiffs' properties are located, and that said program of activities and procedures were and are part and parcel of the defendant's exercise of its delegated power of eminent domain.

All of the evidence and testimony in the above styled causes conclusively shows, and the court so finds, that as a direct and proximate cause of the aforesaid program of activities and procedures by the state road department, and solely as the result thereof, tenants of the plaintiffs vacated the premises of the plaintiffs and said premises so vacated remained vacant and unoccupied, and the plaintiffs could obtain no other tenants to replace those that had left and fled the premises as aforesaid.

All of the evidence and testimony in the above styled causes conclusively shows, and the court so finds, that as of and by the date of March 29, 1965, the state road department had initiated and engaged in substantially all of the activities, procedures, and practices of its said program in connection with the acquisition and construction of said portion of the federal interstate highway

right of way and that from said date to the date of final hearing, said activities, procedures and practices continued and intensified with increasing numbers of incidents; and that as a direct and proximate cause of said program of activities, procedures and practices, and solely as the result thereof, from the date of March 29, 1965 and continuing to the present, the plaintiffs were respectively deprived of the use and enjoyment of their properties to the extent of the rental income otherwise obtainable from said properties, which was and is being lost and unobtainable solely because of the program of activities, procedures and practices of the state road department in the furtherance of its exercise of the power of eminent domain as aforesaid.

The court finds that the state road department has designated the Pitz property as parcel 416, and the Goodman property as parcel 422, both in project and section no. 87270-2426, and as such has filed, on or about October 6, 1966, its petition and declaration of taking in the eminent domain proceeding of State Road Department of Florida, an Agency of the State of Florida, petitioner, v. Rae Frank, et al., defendants, case no. 66L-4154, in the circuit court in and for Dade County seeking to condemn the fee simple estate in and to said properties as it announced to the court at the final hearing of the above styled cause; and that previously no other eminent domain litigation had been instituted in court to acquire any estate in and to the Pitz or Goodman properties.

It is fundamental that the conception of property in the constitutional sense is the control and use of property upon which its value depends. Selden v. City of Jacksonville, 10 So. 457, 459; Tatum Bros. Real Estate Investment Co. v. Watson, 109 So. 623, 626; Ex Parte Wise, 192 So. 872, 875; Kass v. Lewin, 104 So.2d 572, 578; Burritt v. Harris, 166 So.2d 168, and cases therein; 73 C.J.S., *Property*, §13(2). In the *Watson* case, supra, the term property in its constitutional sense was defined, 109 So. 623 at page 626 —

> The term "property" has a most extensive signification, and in its strict legal sense, means that dominion or indefinite right of user and disposition which one may lawfully exercise over particular things or objects. But the word is often used to indicate the subject of the property or the things owned, as a chattel or a tract of land. These things, however, though the subjects of property, are, when coupled with possession, but the visible manifestations of invisible rights, the evidence of things not seen.

The deprivation of the control and use of property is a taking in the constitutional sense particularly when it is done in aid of and as part of the exercise of the power of eminent domain. State Road

Department of Florida v. Tharp, 1 So.2d 868; City of Jacksonville v. Schumann, 167 So.2d 95, cert. den. 172 So.2d 597; Meyers v. City of Daytona Beach, 30 So.2d 354; City of Miami Beach v. Belle Isle Apartment Corp., (3 DCA 1965) 177 So.2d 884, 886; City of Miami v. Romer, 73 So.2d 287; Ocean Villa Apartments Inc. v. City of Fort Lauderdale, (Sup.Ct. 1954) 70 So.2d 901, and cases therein cited.

The Supreme Court of the United States in United States v. General Motors Corporation, 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945), defined the terms "property" and "taken" as contained in the fifth and fourteenth amendments to the United States Constitution in the following language, 65 S.Ct. at pages 359-360 —

> The critical terms are "property," "taken" and "just compensation". It is conceivable that the first was used in its vulgar and untechnical sense of the physical thing with respect to which the citizen exercises rights recognized by law. On the other hand, it may have been employed in a more accurate sense to denote the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it. In point of fact, the construction given the phrase has been the latter. * * * The constitutional provision is addressed to every sort of interest the citizen may possess.

> In its primary meaning, the term "taken" would seem to signify something more than destruction, for it might well be claimed that one does not take what he destroys. But the construction of the phrase has not been so narrow. The courts have held that the deprivation of the former owner rather than the accretion of a right or interest to the sovereign constitutes the taking. Governmental action short of acquisition of title or occupancy has been held, if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter, to amount to a taking.

In this state the determination of what is just compensation for private property that is taken for public use is a judicial function that cannot be performed by the legislature either directly or by any method of indirection. See: Spafford v. Brevard County, 110 So. 451, 454; Hillsborough County v. Kensett, 144 So. 393, 396; Adams v. Housing Authority of City of Daytona Beach, 60 So.2d 663; and Monogahela Navigation Co. v. United States, 148 U.S. 312, 13 Sup. Ct. 622, 626.

It is likewise a judicial function to determine whether or not there has been a "taking" of "property" requiring just or full compensation in the sense in which those terms are employed in the constitutional provisions; and that determination is dependent upon the facts and circumstances presented in each case. Florida East Coast Railway Co. v. Martin County, 171 So.2d 873; City of Jacksonville v. Schumann, 167 So.2d 95; State Road Department

v. Harvey, 142 So.2d 773; State Road Department of Florida v. Darby, 109 So.2d 591; Jacksonville Expressway Authority v. Du-Pree, 108 So.2d 289; State Road Department v. Bender, 2 So.2d 298; State Road Department v. Tharp, 1 So.2d 868; Hillsborough County v. Kensett, 144 So. 393.

The facts presented in the above styled causes show a program of activities, procedures and practices on the part of the state road department which seems to be peculiar to the process of acquisition of right of way and construction of federally assisted interstate highways or expressways in urban areas. This program is prescribed by policies of the federal bureau of roads and of the defendant and has as its objective the removal of large numbers of people and businesses located in the right of way area in a fashion which will assure that the right of way will be cleared so that acquisition of right of way and construction may proceed according to a schedule convenient to the state road department. Why the same program could not be followed after the institution of suit under the provisions of chapter 74 of the Florida Statutes allowing an advanced date for the surrender of possession, is not for this court to answer. However, this court agrees with the pronouncement in State Road Department of Florida v. Darby, 109 So.2d 591, at 593 —

> . . . Those agencies which under the power of eminent domain set about to perform works that require the use of private property are charged with the responsibility of procuring the title to or easements over and upon all such property as may be required for their purposes, and the constitutional requirement to pay just compensation to the private owner will not be frittered away by failure to take the preliminary precaution of acquiring the necessary interests in the manner provided by law.

There are two appellate decisions in Florida which have dealt with aspects of the problem presented by the program of activities, procedures and practices followed by the state road department in connection with federally assisted interstate highways in urban areas. The first is State Road Department of Florida v. Chicone, (S.Ct. 1963) 158 So.2d 753, in which it was held that the depression in the fair market value of property in the path of an interstate highway caused by the threat of condemnation prior to the date of taking should not be considered but that the fair market value of the property as of the date of taking should be determined as if the property were under no threat of condemnation. Under the facts presented in the above styled causes, however, the application of the rule in the *Chicone* case would not compensate the plaintiffs herein for the losses in rental income sustained as aforesaid

prior to the date of taking of the fee simple estate of their respective properties. In fact, if the owners herein are to receive the full fair market value of their property in net amount as of the date of taking in the suit now filed by the state road department to acquire the fee simple estate, the *Chicone* case would indicate that the losses of rental income presented in these cases should also be paid.

The other appellate decision dealing with an aspect of the problem presented by the facts in the above styled causes is Gleason v. State Road Department of Florida, (2 DCA 1965), 178 So.2d 199, in which the lower court was sustained in striking portions of the owner's answer claiming loss of rental income which was alleged to have happened prior to the date of taking as a result of the announcement and publicity of the interstate highway project. The facts presented and proven in the above styled causes, however, go far beyond the allegations of the owner's answer in the Gleason case. It is well to note, also, that under identical facts and circumstances as those presented in the cases at bar, on two occasions in this circuit, the Honorable James Lawrence King, in the cause of State Road Department of Florida v. P.H.J. Corporation, no. 65L-1598, and the Honorable James C. Downey, a visiting judge, in the cause of State Road Department of Florida v. Dunbar H. Johnson, no. 65L-2800, held that loss of rental income prior to the date of taking occasioned by the same type of program of activities, procedures and practices for the same interstate highway project as here involved, were compensable to the owners as a special damage.

The court finds distinctions in fact and law which preclude the case authorities urged by the defendant from applying to the facts and circumstances presented in the above styled causes.

The appellate courts of Florida have consistently interpreted the constitutional guarantees applicable to the power of eminent domain so that the individual's right to and protection of private property has remained vital and equal to the pace of ever increasing complexity of modern society and civilization. History shows that we enjoy the highest degree of civilization and public convenience as well as the highest degree of freedom in the world at the same time. For example, in State Road Department of Florida v. Tharp, 1 So.2d 868, the state road department constructed a road embankment off and distant from the owner's land which impaired the flow of a stream causing the water level of the stream to rise in the owner's mill race reducing the efficiency of the water wheel and consequently cutting the capacity of the owner's grist mill by fifty per cent. The damage caused the owner thereby was

held compensable by the Supreme Court of Florida in the inverse condemnation proceedings which followed.

In the more recent case of City of Jacksonville v. Schumann, (1 DCA 1964), 168 So.2d 95, cert. den. 172 So.2d 597, the First District Court of Appeal sustained the sufficiency of the owners' complaint in inverse condemnation proceedings wherein the owners alleged that they were deprived of the unmolested use and quiet enjoyment of their home by the noise and fumes of the over-flight and near-flight of military and commercial jet aircraft. The court applied the decision in the *Tharp* case, supra, and other decisions outside of Florida in its holding that the allegations of the owners' complaint stated a cause of action for which relief could be granted in inverse condemnation proceedings.

This court is of the opinion that there is no distinction in fact or law which would prevent the principles announced in the *Tharp* and *Schumann* cases, supra, from being applicable here to grant relief to the plaintiffs for the deprivation of the use and enjoyment of their properties as shown by the evidence in these cases.

If the plaintiffs herein were deprived of the use and enjoyment of their respective properties in the manner shown by the evidence in these cases without remedy, the result would be that these particular owners would have to bear a greater financial burden for the accomplishment of a complex public improvement of benefit to the general public, than the other citizens of the general public would be required to pay for the same benefit. This result would be repugnant to established principles of American democracy. See: Dade County v. Brigham, 47 So.2d 602; Jacksonville Expressway Authority v. DuPree, 108 So.2d 289; State Road Department of Florida v. Tharp, 1 So.2d 868.

The state road department has the delegated power, subject to constitutional limitations, to acquire and use any estate in real property necessary to its lawful uses and purposes, which in the instant cases is for a highway that is both a state road (9-A) and an interstate highway. The estate taken can be a limited one less than the fee simple estate and it can be permanent or temporary. Catholic Burse Endowment Fund v. State Road Department, 180 So.2d 513; Florida Statutes, §337.25, §337.27, and chapters 73 and 74; State ex rel. Ervin v. Jacksonville Expressway Authority, 139 So.2d 135.

The estate taken cannot be greater than is reasonably necessary to the accomplishment of the public use or purpose being served. Wilton v. St. Johns County, 123 So. 527; Inland Waterways Development Co. v. City of Jacksonville, 37 So.2d 333; Florida Power

Corp. v. Wenzel, 113 So.2d 747; Miller v. Inland Navigation District, 130 So.2d 615.

In accordance with the findings and reasoning of the court recited above, the court holds that the state road department has taken, without just compensation, a limited estate in and to the Goodman and Pitz properties in the nature of a lease or temporary use, and not the fee simple estate. The nature and extent of the estate so taken is measured by the loss of occupancy and use for rental income of which the owners are and were deprived by the state road department, as stated in the findings of the court above. The limited estates, being in the nature of temporary uses or leases, were first taken by the state road department, as stated above, commencing March 29, 1965, and they continued and will continue on the respective properties according to the amount of vacancy and loss of use in rental income occassioned the respective owners as found by the court above to the date of taking the fee simple title in and to the properties established by the deposit of monies in the registry of the court, pursuant to the order of taking entered, or to be entered, in the cause of State Road Department v. Frank, Dade County circuit court case no. 66L-4154.

The situation resulting is analogous to a tenant who decides to purchase the property he was renting, whereupon he pays the full purchase price for the fee simple title in addition to the rentals he has already paid for the use of the property under his rental arrangement prior to his purchase.

Wherefore, the premises considered, and in accordance with the finding and holding of the court expressed herein, it is considered, ordered, adjudged and decreed that the equities of these causes are with the plaintiffs and that they are entitled to the relief granted by this decree in accordance with the evidence presented in these causes.

It is further considered, ordered, adjudged and decreed that the above styled causes be and the same are hereby transferred to the law side of this court for proceedings in the nature of condemnation proceedings under the applicable law in such cases provided, including chapter 73 of the Florida Statutes and the Florida Constitution, to determine by jury trial the amount of just compensation to be paid to these plaintiffs, consistent with this opinion of the court and final decree, for the taking of their respective properties as in this opinion of the courts and final decree has been held to have occurred, and thereupon for a judgment therein to be entered in favor of the said owners in the amount of said jury award together with interest, costs and reasonable attorneys' fees.