OTT, Judge.
In this consolidated action, appellants appeal the dismissal of Count I in each of their two complaints. We reverse.
• Appellant/Interair Services, Inc. entered into a lease agreement with Pinellas County for hangar space in a county operated airport. By the terms of the lease, the county was allegedly obligated to provide certain *318 maintenance services on the hangar and other airport property.
A fire occurred in the hangar leased by Interair.
The fire precipitated two lawsuits. The first was a subrogation action brought by the Insurance Company of North America, as an insurer of various owners of aircraft stored in the hangar, against Interair and its insurer. In this action, Interair and its insurer brought the county in on a third party complaint. The second action was a direct action by Interair, et al. against the county. The complaints of Interair against the county in each action were similar. Each alleged that the cause of the fire had been a failure of the electrical wiring system in the hangar and that the cause of the electrical system failure had been the county’s failure to properly inspect and maintain it pursuant to its alleged contractual obligation under the lease.
The lower court held that “defendant, Pinellas County, is immune from suit in tort or breach of contract under the Doctrine of Sovereign Immunity . . . ” apparently because no specific waiver of sovereign immunity could be found in either Chapter 125 or Chapter 332, Florida Statutes.
We hold that even if sovereign immunity is applicable, that it was effectively waived herein.[1]
We agree with appellant that when various provisions of Chapter 125, Florida Statutes are read together with § 332.08(3), Fla.Stat. that the conclusion is that not only is a county specifically empowered by general law to enter into the precise type of lease agreement which is the subject of this appeal, but is also expressly authorized by general law to repair and maintain such leased premises — the particular clause of the contract at issue in this litigation.
Section 332.08(3), Fla.Stat. is a portion of the Airport Law of 1945 and expressly confers on a municipality (defined therein to include a county) the power “to lease or assign for a term not exceeding thirty years to private parties, any municipal or state government or the national government or any department of either thereof, for operation or use consistent with the purposes of this chapter, space, area, improvements or equipment on such airports.”
In addition to this express power to lease, et cetera, counties are empowered to assume maintenance obligations. Section 125.012(1), Fla.Stat. provides:
Any county and the board of county commissioners thereof shall have the power, in addition to the powers otherwise conferred:
(1) To construct, acquire, establish, improve, extend, enlarge, reconstruct, equip, maintain, repair, and operate any project as defined in § 125.011, either within or without the territorial boundaries of the county. [Emphasis supplied.]
“Project” is defined by § 125.011(2) to include:
[A]irport facilities of all kinds . including, but not limited to, landing fields, water areas for the landing and taking off of aircraft, hangars, shops, buses, trucks, and all other facilities for the landing, taking off, operating, servicing, repairing, and parking of aircraft . . [Emphasis supplied.]
In addition, § 125.012(8) provides that counties have the power “[t]o make and enter into all contracts and agreements and to do and perform all acts and deeds necessary and incidental to the performance of its duties and the exercise of its powers.”
We hold that the immunity of the county has been waived in light of the above statutory sections.[2] In addition to the statutory *319 support for the waiver discussed above, we are persuaded that the doctrine of fairness requires a reversal in this case.
In State Road Department of Florida v. Tharp, 1 So.2d 868 (Fla.1941) a mill owner sued the state for damages resulting from the erection of a dam up river from his mill. The building of the dam had raised the water level of the river and reduced the efficiency of the mill by 50%. In rejecting the state’s plea of sovereign immunity to' a damage action, Justice Terrell stated that the doctrine of sovereign immunity is subject to the protection of other constitutional guarantees, in that case the right to own and dispose of property:
If a State agency can deliberately trespass on and destroy the property of the citizen in the manner shown to have been done here and then be relieved from making restitution on the plea of nonliability of the State for suit, then the constitutional guaranty of the right to own and dispose of property becomes nothing more than the tinkling of empty words. Such a holding would raise administrative boards above the law and clothe them with an air of megalomania that would eternally jeopardize the property right of the citizens. It would reverse the order of democracy in this country and head it into a blind alley.
1 So.2d at 869-70.
The spirit of Justice Terrell’s opinion strongly suggests that one-way contracts between the state and private citizens are equally abhorrent. Justice Terrell critized the “something for nothing” or “unfairness” of the state in taking advantage of a private citizen. A noteworthy passage was as follows:
In the administration of constitutional guaranties, the State cannot afford to be other than square and generous. To deprive the citizen of his property by other than legal processes and depend on escape from the consequences under cover of the plea of nonsuability of the State is too anomalous and out of step with the spirit and letter of the law to claim protection under the Constitution.
1 So.2d at 870.
Where the state has lawfully entered into a business contract with an individual, the obligations and duties of the contract should be mutually binding and reciprocal. There is no mutuality — or fairness — where a state or a county can enter into an advantageous contract and accept its benefits but refuse to perform its obligations. Particularly, as here, where the contract and the obligation are expressly authorized by statute. It goes without saying that the contract obligations must be alleged and proven.
We do not find any decision of the appellate courts of Florida allowing the state to hide behind the doctrine of sovereign immunity to avoid its clearly established contractual obligations.
Where the legislature has expressly authorized the counties to own, operate, maintain and contract with respect to airport facilities, we think the waiver of sovereign immunity is clearly and sufficiently implied even if it is required.
The fact that the contract was negligently violated, if at all, is not determinative. Any actionable breach of a contract necessarily occurs either deliberately or negligently. For this purpose the decisive *320 consideration is whether or not there is a valid contractual obligation due and unperformed, not that the failure of performance was due to negligence.
Reversed and remanded for further proceedings consistent herewith.
BOARDMAN, Acting C. J., and SCHEB, J., concur.

. This court is also of the opinion that the Doctrine of Sovereign Immunity does not apply to bar a contract action against a county based upon the breach of an express contract. This is an extremely close question under existing Florida law. We believe, however, that the weight of authority both in Florida and in the other jurisdictions of the United States would require our holding that a contract action would be allowable. In any event, as our holding is based on another ground, we need not reach this specific issue.

. Section 125.15, Fla.Stat. provides that “the county commissioners shall sue and be sued in the name of the county of which they are com *319 missioners.” This language may or may not be additional support for our conclusion that the county may be sued in this case. Appellees place great reliance upon Spangler v, Florida State Turnpike Authority, 106 So.2d 421 (Fla. 1958) in arguing that the county is immune from suit. In Spangler the supreme court held with reference to § 125.15 that:
Despite this general language in the legislative statement of the powers of the counties, we have held throughout the years that a county which is a division of the State shares in the State’s immunity from liability in tort actions.
106 So.2d at 423. Although we regard Span-gler as narrowly circumscribed, we point out that, in any event, we do not rely upon § 125.15 as authority for waiver herein. We certainly agree that § 125.15 alone does not constitute a general waiver of sovereign immunity.