439 So.2d 276 (1983)
COUNTY OF VOLUSIA, Etc., et al., Appellants,
v.
W.R. PICKENS and Continental Insurance Company, Appellees.
Nos. 82-65, 82-397.
District Court of Appeal of Florida, Fifth District.
September 22, 1983.
Rehearing Denied October 26, 1983.
*277 Daniel R. Vaughen, Asst. County Atty., DeLand, for appellants.
Peter B. Heebner of Van Wert, Heebner & Kennedy, P.A.S., Daytona Beach, for appellee W.R. Pickens.
SHARP, Judge.
Volusia County appeals from a final judgment of $106,300.00 entered against it in an inverse condemnation case. Pickens filed this suit in 1978, and the trial court held that the county had "taken" Pickens' land on August 18, 1976. We affirmed that order. County of Volusia v. Pickens, 399 So.2d 147 (Fla. 5th DCA 1981). The issues of compensation or damages to Pickens were then tried before a jury. In this appeal, the county argues that the trial court erred in directing the jury to value the property as of the date the trial on damages took place (1981), rather than the date of taking (1976), and in allowing Pickens to recover a sum for lost income (rents), together with interest from the date of taking to the date of the trial on compensation.[1] We agree the trial court erred on both points.
Our state constitution provides that "full compensation" must be made to landowners if private property is taken for a public purpose.[2] The constitution, however, does not state the date upon which "full compensation" should be measured, nor have we discovered any controlling statute or Florida appellate decision on this point. Possibly this lack of Florida authority is due to the fact that everyone assumed inverse condemnation suits were analogous to condemnation proceedings, and that the date of taking for both kinds of suits is the critical time of measurement of compensation.[3] Further, it is unusual for the land to substantially appreciate in value after the date of taking, as in this case.[4]
Although there is authority in other states for other times to measure compensation for the land taken in inverse condemnation proceedings,[5] we think the date of taking is the better rule. It is most consistent with the practice in condemnation proceedings, and Florida courts have frequently applied the same rules to both proceedings on the grounds of logic and fairness. See, e.g., County of Volusia v. Pickens, 435 So.2d 247 (Fla. 5th DCA 1983). Further, there is some support in Florida case law for establishing the date of taking as the date to value compensation.[6] This rule might not be controlling in exceptional situations, analogous to eminent domain proceedings,[7] but it should prevail in most cases. We find no exceptional circumstances in this case.
*278 We also think the trial court erred in allowing an award for Pickens' estimated loss of rental income from date of taking to the time of trial on compensation. Analogous with eminent domain proceedings, the public body must pay:
[J]ust compensation, i.e., value at the time of the taking plus an amount sufficient to produce the full equivalent of that value paid contemporaneously with the taking. (Emphasis supplied.)
Behm v. Division of Administration, Department of Transportation, 383 So.2d 216, 218 (Fla. 1980) (quoting United States v. Klamath and Moadoc Tribes of Indians, 304 U.S. 119, 123, 58 S.Ct. 799, 801, 82 L.Ed. 1219, 1223 (1938)). Since Pickens' property was taken in 1976, no damages for loss of rental income would be included as just compensation after that date because, in legal theory, Pickens suffered his loss of the property in 1976, and thereafter it belonged (albeit wrongfully appropriated) to the county.
Section 73.071, Florida Statutes (1981), provides for business losses in condemnation proceedings. However, the parties concede Pickens' rental losses do not fit within the statutory provisions. Therefore, the award cannot be sustained on that basis.[8] Lost profits and business damages are generally not deemed to be property for which compensation is due in the context of condemnation proceedings, absent a special statutory remedy. Behm; Jamesson v. Downtown Development Authority of the City of Ft. Lauderdale, 322 So.2d 510 (Fla. 1975). No special statute appears applicable to this case. We think, however, Pickens is entitled to pre-judgment interest based on the value of his property taken in 1976 from that date as an appropriate element in his full compensation.[9]
Accordingly, the judgment is reversed and this proceeding is remanded for a determination of full compensation consistent with this opinion.
REVERSED and REMANDED.
COWART, J., concurs.
FRANK D. UPCHURCH, Jr., J., dissents with opinion.
FRANK D. UPCHURCH, Jr., Judge, dissenting:
The majority concludes that the constitutional guaranty of "full" compensation is satisfied by valuing the property as of the date of "taking." Because I believe that the property should be valued as of the time of trial, I respectfully dissent.
In the context of inverse condemnation, the term "taking" has been defined as:
[E]ntering upon private property for more than a momentary period and under the warrant or color of legal authority, devoting it to public use or otherwise informally appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof.
Edwards Dairy, Inc. v. Pasco Water Authority, 378 So.2d 866 (Fla. 2d DCA 1979). While the trial court has determined that the county had "taken" Pickens' land in 1976, it does not necessarily follow that this date should be used for valuation of the property.
In White v. State Highway Commissioner, 201 Va. 885, 114 S.E.2d 614 (1960), the Commissioner had built a road on a portion of the Whites' property in 1943 but did not institute condemnation proceedings until 1958.[1] The state argued that the Commissioner had entered into possession of the Whites' property "under color of title" and devoted it to public use in 1943 and hence the property should be valued as of that *279 time. The court rejected this argument, explaining:
[S]o far as the appellants, the real owners of the property, are concerned, the entry of the Commissioner on their land in 1943 was unauthorized and unlawful. Pursuant to the statute then in effect, the Commissioner might have instituted condemnation proceedings and immediately obtained title to the property. (Michie's Code of 1942, § 1969j(4).) Had he done so, this would have been a lawful taking. But that course was not followed.

We hold that the time of taking, with reference to which compensation is to be made, means the time at which the property is taken lawfully by appropriate legal proceedings. Conversely, it does not mean the time at which the property is taken unlawfully and without legal authority, as was done in this instance. (emphasis added)
Id. 114 S.E.2d at 616.
This is in accord with the general rule as stated in 4 Nichols' The Law of Eminent Domain § 12.23[3] (1981):
The rule that damages are to be assessed as of the date of the taking does not contemplate a physical taking not sanctioned by law, but a taking by appropriate legal proceedings. Consequently, if a corporation invested with the power of eminent domain takes possession of private property in advance of condemnation proceedings, it cannot insist that the compensation awarded in the condemnation proceedings be fixed as of the date of the unlawful entry, instead of the date which the law of the state ordinarily prescribes.
To the same effect, see, e.g., Anderson v. Port of Seattle, 49 Wash.2d 528, 304 P.2d 705, 707 (1956) (recognizing rule); Williams v. Henderson County Levee Imp. Dist., 59 S.W.2d 93 (Tex.Com.App. 1933); Koerber v. City of New Orleans, 228 La. 903, 84 So.2d 454 (1955). See also Uniform Eminent Domain Code § 1003 (1980).
Our own courts have consistently held that in eminent domain proceedings, absent unusual circumstances,[2] the amount of compensation to be awarded to a property owner is the value of the land taken at the time of the lawful appropriation. Yoder v. Sarasota County, 81 So.2d 219 (Fla. 1955); Staninger v. Jacksonville Expressway Authority, 182 So.2d 483 (Fla. 1st DCA 1966). When the condemning authority exercises its power of eminent domain pursuant to chapters 73 and 74, the amount of compensation to the property owner is determined as of the date of trial, or the date upon which title passes, whichever occurs first. § 73.071(2), Fla. Stat. (1981). At that point, the condemning authority has the lawful right or interest in the property and the owner has the use of the monetary equivalent of his property.
Here, the majority has determined that the time of "taking", with reference to which "full" compensation must be made, is 1976. At this time, Pickens' property was valued at $35,700. However, at the time of the trial in 1981, the property had appreciated to $80,000. It has been my experience that inverse condemnation actions do not arise from a blatant seizure of a property. Normally, the invasion is more subtle. For example, the culvert under a road was not adequately engineered causing the flooding of an owner's land in wet periods. The owner complains and the agency responsible may make repairs or modifications. Neither party contemplates a taking at that point. Perhaps several such cycles occur. Only when the agency refuses to make further modifications does the owner seek a judicial remedy. To force the owner to accept compensation based on the value of the property at the time of taking (which the court might conclude occurred when the inadequate drainage first manifested itself), is unfair. Until the property has been lawfully appropriated by the condemning authority, there has been no change of ownership. Certainly if the landowner sought damages in trespass and the agency then instituted condemnation proceedings, valuation *280 would be at the time the order of taking was entered and not the date of the first trespass. Why should there be another valuation date when the owner forces the acquisition by inverse condemnation? The result today encourages those with the power of eminent domain to avoid the statutory proceedings, thereby forcing the property owner to seek redress. And, when the property owner does seek redress for the unlawful appropriation of his land, he will be paid in today's dollars for what the property was worth years ago. Since this will not afford the property owner "full" compensation, I would hold that the trial court properly instructed the jury to value the property as of the date of trial.
NOTES
[1] The county also urges that we reconsider the inverse condemnation remedy in light of the waiver of sovereign immunity. We approved this proceeding in our prior ruling and we decline to reconsider that issue in this appeal. See, e.g., State Dep't. of Transp. v. Florida East Coast Ry. Co., 275 So.2d 289 (Fla. 3d DCA 1973).
[2] Art. X, § 6(a), Fla. Const.
[3] See §§ 73.041 and 73.071(2), Fla. Stat. (1981).
[4] Counsel stipulated in this case that an MAI appraiser would testify that as of 1976, the fair market value of Pickens' property was $35,750, and at trial Pickens' expert testified that it was worth $80,300 in 1981.
[5] See generally 29A C.J.S. Eminent Domain § 185 (1965); 26 Am.Jur.2d Eminent Domain § 152 (1966); Annot., 2 A.L.R.3d 1038 (1965).
[6] See Worth v. City of West Palm Beach, 101 Fla. 868, 132 So. 689 (1931); Casa Loma Springs Dev. Co. v. Brevard County, 93 Fla. 601, 112 So. 60 (1927); see also United States v. Clarke, 445 U.S. 253, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980).
[7] Yoder v. Sarasota County, 81 So.2d 219 (Fla. 1955).
[8] City of Miami v. Coconut Grove Marine Properties, Inc., 358 So.2d 1151, 1154 (Fla. 3d DCA 1978).
[9] Stewart v. City of Key West, 429 So.2d 784 (Fla. 3d DCA 1983); see Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 44 S.Ct. 471, 68 L.Ed. 934 (1924); Behm v. Division of Admin., Dep't. of Transp., 383 So.2d 216 (Fla. 1980); § 74.061, Fla. Stat. (1981).
[1] The Whites discovered that the road was on their property and brought it to the attention of the Commissioner in December, 1957.
[2] See Casa Loma Springs Dev. Co. v. Brevard County, 93 Fla. 601, 112 So. 60 (1927).