709 So.2d 124 (1998)
BASIC ENERGY CORPORATION, Appellant,
v.
STATE of Florida DEPARTMENT OF CORRECTIONS on Behalf of The INTERNAL IMPROVEMENT TRUST FUND, Appellee.
No. 97-1685.
District Court of Appeal of Florida, First District.
March 11, 1998.
Rehearing Denied May 6, 1998.
*125 Donald J. Schutz, St. Petersburg, for Appellant.
Robert A. Butterworth, Attorney General; Robert I. Scanlan, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Appellant Basic Energy Corporation raises several issues in regard to the non-final order of taking issued in the eminent domain proceeding below. We have jurisdiction[1], see Basic Energy Corp. v. Hamilton County, 652 So.2d 1237 (Fla. 1st DCA 1995); Crigger v. Florida Power Corp., 469 So.2d 941 (Fla. 5th DCA 1985), and affirm all issues raised. We write, however, to address Basic Energy's claim regarding the meaning of the word "appropriation" in section 73.041, Florida Statutes.
In March 1994 the City of Jasper instituted an eminent domain proceeding directed at real property owned by Basic Energy with the intent of taking title to the property and donating the property to the Department of Corrections (DOC) for the construction of a state prison, an annex of the existing Hamilton County prison. An order of taking subsequently was issued to the City of Jasper, and the City deposited money into the court registry as required by section 73.111, Florida Statutes, to vest title to the property in the City. Basic Energy appealed the order and prevailed. See Basic Energy Corp. v. Hamilton County, 652 So.2d 1237, 1239 (Fla. 1st DCA 1995)(remanding for further proceedings because of determination that city's stated municipal purpose for exercise of eminent domain was invalid). During the appeal's pendency while title was vested in the city, DOC constructed the proposed state prison on the land. As a result of this court's reversal and remand, title to the land reverted to Basic Energy, and DOC initiated an eminent domain proceeding pursuant to section 73.041, Florida Statutes, to obtain title to the land on which the prison now stood. Basic Energy contested the proceeding. Upon the filing of DOC's "Motion for Determination of Date of Appropriation," the court held an evidentiary hearing to determine the date of valuation of the property for the assessment of full compensation by a jury. The witnesses testified and Basic Energy conceded that the corporation was ousted from the property when DOC initiated site work on the land. Subsequently, the lower court issued the "Order Determining Date of Appropriation," which is the subject of the instant appeal. The lower court held that July 18, 1994, the date DOC ousted Basic Energy from its property, was the date of appropriation and ordered that the jury would determine the amount of full compensation as of that date. The court concluded as a matter of law that "appropriation" as used in section 73.041 means "`a taking to the exclusion of others; a conversion of property where performed without right'" and found this definition confirmed in various cited inverse condemnation cases. The court also found that the property is being used for a legitimate public purpose.
The crux of appellant's argument is that property is not appropriated for purposes of section 73.041 until the property is lawfully appropriated, which according to appellant occurs when an order of taking issues. DOC counters that a plain reading of the statute refutes appellant's claim and that what Basic Energy ultimately seeks is compensation from DOC for the property as valued with a state prison on it. Appellant's argument fails, and we affirm the trial court's holding.
The trial court's determination that the time of appropriation for purposes of compensation is the time when DOC took physical, if not lawful, possession is supported by a plain reading of the applicable statutes. Section 73.071(2), Florida Statutes, which applies to the compensation determination in the majority of eminent domain proceedings, provides that "[t]he amount of ... compensation *126 shall be determined as of the date of trial, or the date upon which title passes, whichever shall occur first." See 21 Fla. Jur 2d Eminent Domain § 86 (1980)("In eminent domain proceedings, the property owner's damages must be related to the time of taking, which in some cases may be the time of wrongful taking of the property, but which usually will be the time of institution of the proceedings.")(citing Casa Loma Springs Dev. Co. v. Brevard County, 93 Fla. 601, 112 So. 60 (1927)). Section 73.041, with which we are concerned here, applies to the specific circumstance presented when an entity with eminent domain powers must acquire title to land after it already has begun using the property, i.e., after it has taken possession. The statute provides as follows:
73.041 Acquiring or perfecting title after appropriation.  In any instance, where the petitioner has not acquired the title to or a necessary interest in any lands which it is using, or if at any time after an attempt to acquire such title or interest, it is found to be defective, the petitioner may proceed under this chapter [Chapter 73 Eminent Domain] to acquire or perfect such title or interest; provided, however, that the compensation to be allowed the defendants shall be determined as of the date of appropriation.
Clearly, this statute sets the date of appropriation in this special circumstance as the date determinative of compensation, and this is not the same date established in 73.071(2). If the legislature had intended the date of appropriation to be the date of the trial or the date title passes as delineated in 73.071, then the legislature easily could have so specified. The title of the statute makes clear that the entity with eminent domain authority is obtaining title after the appropriation has occurred. Although the definition of "appropriation" is not provided by statute, the word is implicitly defined by its use in the statute as the time the governmental entity began "using" the land.
Basic Energy argues that the 1941 amendments to section 73.041's predecessor statute, which added the compensation and appropriation language, resulted from State Road Department v. Tharp[2], 146 Fla. 745, 1 So.2d 868 (1941), in which the court stated that a governmental appropriation or taking must be accomplished through orderly process. This pronouncement, however, was hardly a new constitutional precept. A review of the statutory history of section 73.041 reveals the more likely source for the compensation and appropriation language in the statute.
Prior to 1941, the state statutes contained separate chapters on eminent domain procedures applicable to each of the different entities with eminent domain powers. See, e.g., §§ 1516 (acquiring title after appropriation, county), 1970 (acquiring title after appropriation, cities and towns), 3289 (acquiring title after appropriation, circuit court procedure), Revised General Statutes (1920). For example, in 1921 the legislature authorized drainage and subdrainage districts to use the power of eminent domain and prescribed the procedures to be followed. Ch. 8558, Laws of Florida (1921). Relevant to our discussion here, Section 4 addressed the circumstance of acquiring title after appropriation and the amount of compensation due:
Any drainage or sub-drainage district in this State, having already constructed its canals, or other controlling works, without having acquired its right-of-way or other lands therefor, is hereby authorized to condemn the same, and in trying what amount shall be paid to the defendants for the lands so condemned, the jury shall award a just compensation therefor, which compensation shall be the value of the lands at the time of appropriation for the purposes of the district.
The legislature expressly defined "time of appropriation" for purposes of this section as the "time when the canal or other works of the said district were constructed," and specified that "in no case in making its award shall the jury take into consideration what benefit may have accrued to the said lands by the construction of the said canal, or *127 controlling works." Ch. 8558, § 5, Laws of Fla. (1921). Clearly, the legislature intended the time of possession and not the time of legal condemnation to be the date of appropriation for purposes of determining compensation in cases where the districts sought title after the fact of possession, i.e., appropriation.
Subsequently, in 1941 the legislature consolidated the several eminent domain procedural statutes for the various entities into one chapter of Florida Statutes by passing "An Act Relating to Eminent Domain and Making Uniform the Pleading, Practice and Procedure Therein." Ch. 20930, Laws of Fla. (1941). The act applied to all entities authorized by the state to exercise the power of eminent domain. Section 9 of the Act provided as follows:
In any case where the petitioner shall not have acquired title to any lands which the petitioner is using, or if at any time after an attempt to acquire title by condemnation proceedings or otherwise, it shall be found that the titles so acquired are defective, the petitioner may proceed under this chapter to acquire or perfect such title, or to acquire any outstanding right, title or interest in and to such property; provided, however, that the compensation to be allowed the defendants under this section shall be a just compensation for the property, or the right, title or interest therein, taken as of the date of appropriation.
(codified at § 73.09, Fla. Stat. (1941) and entitled "Acquiring title after appropriation"). It appears, therefore, that the compensation and appropriation language amended to this statute in 1941 during the consolidation process stemmed from the statute on acquiring title applicable to drainage districts and not from Tharp. Substantially the same language regarding appropriation and compensation is retained in 73.041. Thus, the trial court's determination in this case that the word "appropriation" in 73.041 refers to the time of possession is supported by the legislative history of the statute.
Because there is no case law construing the term "appropriation" in section 73.041, Basic Energy relies for support on Yoder v. Sarasota County, 81 So.2d 219 (Fla.1955), in which the condemnee in an eminent domain proceeding appealed the court's denying him the opportunity to present evidence of the property's future value if it were developed for its most profitable use. The supreme court affirmed saying the following:
We have consistently ruled that the amount of compensation to be awarded to a property owner when his property is sought to be taken in an eminent domain proceeding is the value of the land taken at the time of the lawful appropriation. It is appropriate to show the uses to which the property was or might reasonably be applied, and the damages, if any, to adjacent lands. Nevertheless, the value must be established in light of these elements as of the time of lawful appropriation.

Id. at 220-221. Importantly, Yoder did not address the special circumstance of an eminent domain proceeding maintained pursuant to section 73.041. In light of this and the significantly different issue addressed in Yoder, the case is simply not determinative here. Other cases, however, tend to support DOC's contention that compensation is tied to the date the eminent domain authority took the land (without lawful title) and that this is the date of appropriation. In Jacksonville, T & K.W. Ry. v. Adams, 28 Fla. 631, 10 So. 465 (1891), the railroad with eminent domain authority had constructed a track on land without consent, and thereafter initiated eminent domain proceedings to acquire title. The court confirmed that where an entity having the power of eminent domain has illegally entered and "appropriated" property without taking the steps to condemn the land, the entity has the authority to condemn the property through proper procedures and secure the legal right to possession. Id. at 467. In response to the landowner's claim of entitlement to compensation for the value of the land with the improvements made by the railroad, the court responded that this was "not the law." Id. The court said that where a body having the power of eminent domain has entered without consent and made "improvements for the public purpose for which it was created and given such power," the condemnee is not entitled to compensation for the land including *128 those improvements made by the condemning entity. In many ways the instant situation in which compensation is being given after a wrongful taking is like an inverse condemnation proceeding in which the date of valuation for compensation purposes is the date the property was wrongfully appropriated. The Florida Bar, Florida Eminent Domain Practice & Procedure § 9.31 (1996)(citing Crigger v. Florida Power Corp., 469 So.2d 941 (Fla. 5th DCA 1985) and County of Volusia v. Pickens, 439 So.2d 276 (Fla. 5th DCA 1983)).
Accordingly, we affirm the trial court's interpretation of section 73.041 and its determination of the date of appropriation in its non-final order of taking and all other issues raised in this appeal.
MINER and WOLF, JJ., and SHIVERS, DOUGLASS B., Senior Judge, concur.
NOTES
[1] In response to the Department of Corrections' motion to dismiss, Basic Energy argued that "[a]ny way it is viewed, [the order appealed] is a non-final order of taking in an eminent domain case" with "the same legal effect of an order of taking in a standard eminent domain case."
[2] Tharp was issued on April 25, 1941, and review was denied May 19, 1941. The legislature was in session from April 8, 1941, to June 6, 1941. Although possible, it seems unlikely that the statute was amended in this short time in response to Tharp, which did not announce a new principle of law.