473 So.2d 278 (1985)
Tom NORDMANN, Appellant,
v.
FLORIDA DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES, Appellee.
No. 85-561.
District Court of Appeal of Florida, Fifth District.
August 1, 1985.
James J. Kennedy, III, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellant.
Robert A. Chastain, General Counsel, Florida Dept. of Agriculture and Consumer Services, Tallahassee, for appellee.
COBB, Chief Judge.
The issue on this appeal is whether the State of Florida, pursuant to its police power, has the constitutional authority to destroy apparently healthy, but "suspect," citrus plants without resort to eminent domain or quarantine procedures. The facts herein essentially are undisputed. Citrus canker, a virulent disease which first appeared in Florida in 1914, was detected in a central Florida tree nursery in August, 1984. Tom Nordmann, a Volusia County citrus grower, received 568 trees from that nursery in March, 1984. He planted these trees and has since maintained them. Subsequently, the Florida Department of Agriculture (Department), pursuant to emergency rule-making procedures and statutory authority,[1] issued an order directed to Nordmann that those trees would be destroyed by burning and adjacent trees would be treated. Nordmann refused to consent, and the Department sought injunctive relief to enforce its eradication program.[2]
*279 An evidentiary hearing was held on March 4, 1985. Expert testimony was presented to the trial court by the Department as to the destructive nature of citrus canker. The trial court entered a preliminary injunction granting the Department's request to implement its eradication program, but stayed enforcement thereof pending this appeal.
On appeal Nordmann points out that his 568 trees, although inspected during the fourteen months he has owned them, have not been found to be infected but are only "suspect" because of their origin. He contends that the department has thus failed to show imminent danger justifying use of the state police power to destroy the trees without the payment of compensation, as would be required in the exercise of an eminent domain proceeding. Nordmann also argues that the Department could utilize quarantine[3] and inspection measures for the remaining months during which the trees could harbor a dormant canker bacteria.[4] Although conceding the state's power to destroy diseased trees, Nordmann challenges the destruction of apparently healthy trees, citing to Corneal v. State Plant Board, 95 So.2d 1 (Fla. 1957), and State Plant Board v. Smith, 110 So.2d 401 (Fla. 1959). In essence, Nordmann contends that the state cannot summarily destroy his trees under the police power, absent a clear showing that they are diseased. The state's burden, he contends, "is to show by a preponderance of the evidence that the public will be irreparably harmed if these trees are not immediately destroyed, and that the same result cannot be achieved through the state's eminent domain power," or, alternatively, through its quarantine authority.
In response, the Department cites to the broad authority granted to it by section 581.031(17), Florida Statutes (1984):
To supervise, or cause to be supervised, the treatment, cutting, and destruction of plants, plant parts, fruit, soil, containers, equipment, and other articles capable of harboring plant pests or noxious weeds, if they are infested or located in an area which may be suspected of being infested or infected due to its proximity to a known infestation, or if they came from a situation where they were reasonably exposed to infestation, when necessary to prevent or control the dissemination of plant pests or noxious weeds or to eradicate same and to make rules therefor.
This section was cited in Denney v. Conner 462 So.2d 534 (Fla. 1st DCA 1985), which the Department contends is the controlling case, a contention with which the trial court agreed. The factual situation in Denney is analogous to the instant case. Therein, the Department had issued an order per section 120.59(3), Florida Statutes (1983), requiring the immediate destruction of 3,500 citrus trees which had been purchased from a nursery where citrus canker had been detected. Such orders are based on an immediate danger to the public's health, safety or welfare. Appellate review centers on the particularity with which the order recites the factual findings. The contention in Denney was that since the order did not recite that the trees in question manifested signs of canker infection, there was no immediate danger and, hence, destruction of "healthy trees" would violate the owners' constitutional right to due process. In rejecting this contention, the First District distinguished Corneal and Smith:
In Corneal, the Court addressed the constitutionality of a rule promulgated by the State Plant Board that required the pulling of all citrus and avocado trees in designated areas affected with a plant disease known as "spreading decline." The rule required the destruction of the four healthy trees nearest the last visibly affected tree. Spreading decline was *280 caused by the burrowing nematode, which traveled at the rate of thirty-six feet (or 1.6 trees) per year. The court found that healthy trees, not infected with burrowing nematodes, offered no immediate menace to neighboring trees and, therefore, could not be destroyed without due compensation to the owner. Simply put, the Court found that no emergency existed; thus, the department was not justified in ordering the summary destruction of the plants.
In State Plant Board v. Smith, 110 So.2d 401 (Fla. 1959), the Court recognized that, in cases of obvious and immediate danger, the state, in the exercise of its police power, may summarily destroy private property in order to protect the public. The Court stated:
The citrus disease here involved  spreading decline caused by a burrowing nematode  is not carried by the wind or by insects from grove to grove... . The only possible reason for the summary destruction of the healthy trees would be the imminent danger of the spread of the disease from an infested to a non-infested grove. Since the facts ... show that there is no such danger, we cannot find a single `compelling public interest' sufficient to justify making an exception to the basic and fundamental rule of due process, requiring notice and a hearing before depriving a person of a substantial right. (Emphasis in original.)
We find the facts of the instant case to be clearly distinguishable from Corneal and Smith, above. No real controversy exists on the critical fact that citrus canker may be transmitted by both natural (wind and rain) and artificial (man and machinery) means and that it may lay dormant in apparently healthy plants for some months (one botanist opined up to eighteen months) after exposure to infected plants before manifesting signs of the disease.
Those circumstances underlie the department's conclusion that, even though the plants appear healthy and at this time evidence no sign of citrus canker, appellants' plants still present an imminent danger in the spread of the disease since they have been exposed to infested or infected plants.
Id. at 536.
The Denney court proceeded to find that the Department's order sufficiently set forth facts indicating an immediate threat to the public health, safety or welfare justifying the agency action. The appellate court did not attempt to determine whether the trees in question were in fact healthy or diseased, and did not address the issue of compensation. The holding was that the Department's order adequately showed "that the threat of spreading citrus canker is of sufficient imminence and scope to justify the emergency order... ."
The substantive issue is the same in this case as in Denney: are the broad police powers vested in the Department by Chapter 581 constitutional as applied in cases concerning citrus canker? We agree with Denney that they are. Based upon the rationale set forth in that case, we affirm.
AFFIRMED.
DAUKSCH and ORFINGER, JJ., concur.
NOTES
[1] See §§ 581.181, Fla. Stat. (1983), and 581.031(1) and (6), Fla. Stat. (1984).
[2] Nordmann could have filed for injunctive relief pursuant to section 120.59(3), Florida Statutes, but reached the trial court by forcing the Department to enforce its order. No advantage inures to Nordmann or the Department as a result of this procedural posture.
[3] See § 581.031(7), Fla. Stat. (1984).
[4] The total time a tree may harbor a dormant canker is up to eighteen months, according to the testimony of the state's expert.