906 So.2d 1005 (2005)
Brian P. PATCHEN, et ux., Petitioners,
v.
FLORIDA DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES, Respondent.
No. SC02-1291.
Supreme Court of Florida.
April 14, 2005.
Rehearing Denied July 1, 2005.
Joseph H. Serota of Weiss, Serota, Helfman, Pastoriza and Guedes, P.A., Miami, FL, and Robert C. Gilbert, Coral Gables, FL, for Petitioner.
Wesley R. Parsons and Jack R. Reiter of Adorno and Yoss, P.A., Miami, FL, for Respondent.
Robert A. Ginsburg, Miami-Dade County Attorney and Robert A. Duvall, III, Assistant County Attorney, Miami, FL; and Edward A. Dion, Broward County Attorney, Andrew J. Meyers, Chief Appellate Counsel, and Tamara M. Scrudders, Assistant County Attorney, Fort Lauderdale, amicus curiae, on behalf of Broward County and Miami-Dade County.
Roy D. Wasson, Miami, FL, Malcolm A. Misuraca, Resolution Law Group, P.C., Lafayette, CA, John G. Crabtree, Key Biscayne, FL, and Craig P. Kalil of Aballi, Milne, Kalil and Escagedo, P.A., Miami, FL, amicus curiae, on behalf of Brooks Tropicals, Inc.
PER CURIAM.
We have for review a decision of the Third District Court of Appeal on the following question, which the court certified to be of great public importance:
Does the Florida Supreme Court's decision in Department of Agriculture & Consumer Services v. Polk, 568 So.2d 35 (Fla.1990), which held that the Department's destruction of healthy commercial citrus nursery stock within 125 feet *1006 of trees infected with citrus canker did not compel state reimbursement, also apply to the Department's destruction of uninfected, healthy noncommercial, residential citrus trees within 1900 feet of trees infected with citrus canker?
Patchen v. State Dep't of Agric. & Consumer Servs., 817 So.2d 854, 855-56 (Fla. 3d DCA 2002). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons discussed below, we answer the certified question in the negative and quash the decision of the Third District.

FACTS AND PROCEDURAL HISTORY
In November 1995, citrus canker was discovered on residential properties in Broward, Dade, and Manatee counties, and the Department of Agriculture and Consumer Services (the Department) initiated emergency eradication procedures. Initially, the Department adopted a policy of destroying citrus trees located within 125 feet of diseased plants. However, the Department found that this conservative approach failed to eradicate the disease. During 1998, the Department conducted studies to determine the efficiency of the 125-foot policy. The Citrus Canker Technical Advisory Task Force, a body of regulatory individuals, scientists, and citrus industry representatives, recommended that the Department adopt a policy requiring the destruction of infected trees and all other citrus trees within a 1900-foot radius. On January 1, 2000, Commissioner of Agriculture Bob Crawford adopted the recommendation of the task force, and the 1900-foot buffer zone policy became effective.
Pursuant to the Department's eradication procedures, on October 31, 2000, agents of the Department destroyed citrus trees on the petitioners' property. The destroyed trees were within the 1900-foot buffer zone of canker infested trees.
The petitioners sued the Department for inverse condemnation. The Department moved for summary judgment based upon evidence that the petitioners' trees were exposed to citrus canker. The trial court granted the motion and found that the petitioners had no cause of action for inverse condemnation because the destruction of citrus trees located within 1900 feet of trees infected with citrus canker had no marketable value. The petitioners appealed. The Third District Court of Appeal affirmed, finding that pursuant to Department of Agriculture & Consumer Services v. Polk, 568 So.2d 35 (Fla.1990), and State Department of Agriculture & Consumer Services v. Varela, 732 So.2d 1146 (Fla. 3d DCA 1999), the petitioners had no cause of action because the trees had no marketable value. The Third District denied the petitioners' motion for rehearing but certified the above-mentioned question to this Court as one of great public importance.
In 2002, section 581.184(1)(b), Florida Statutes, was amended to state in pertinent part:
"Exposed to infection" means citrus trees located within 1900 feet of an infected tree.
Section 581.184(2)(a) was amended to state in pertinent part:
The department shall remove and destroy all infected citrus trees and all citrus trees exposed to infection.
§ 581.184, Fla. Stat. (2002). Section 581.1845 was added to provide compensation to eligible homeowners whose citrus trees have been removed under a citrus canker eradication program. Included within the eligible homeowners were homeowners who have had one or more citrus trees removed from the property by a tree-cutting contractor as part of a citrus canker eradication program on or after January 1, 1995.
*1007 Section 581.1845, Florida Statutes, states:
Citrus canker eradication; compensation to homeowners whose trees have been removed. 
(2)(a) To be eligible to receive compensation under this program, a homeowner must:
1. Be the homeowner of record on the effective date of this act for residential property where one or more citrus trees have been removed as part of a citrus canker eradication program;
2. Have had one or more citrus trees removed from the property by a tree-cutting contractor as part of a citrus canker eradication program on or after January 1, 1995; and
3. Have received no commercial compensation and is not eligible to receive commercial compensation from the United States Department of Agriculture for citrus trees removed as part of a citrus canker eradication program.
(b) Notwithstanding subparagraph (a)1., and for compensation during the 2003-2004 fiscal year only, to be eligible to receive compensation under the program for residential property where one or more citrus trees have been removed on or after July 1, 2001, as part of a citrus canker eradication program, a homeowner must be the homeowner of record on the date the trees were removed. This paragraph expires July 1, 2004.

ANALYSIS
This present case was decided by the trial court and the district court on the basis of the statute and administrative rule in 2000, when the petitioners' trees were destroyed. In the summary final judgment, the trial court set forth the statutory and administrative authority upon which it considered that the Department of Agriculture destroyed trees within 1900 feet of diseased trees. The trial court stated:
5. The [Citrus Canker Eradication Program (Program)] operates in South Florida under the direction of Kenneth L. Bailey. The Program identifies citrus infected with citrus canker through either field or laboratory diagnosis by trained pathologists. Upon identification of an infected citrus tree, a radius of 1900 feet is designated around such tree, and all citrus within this radius is deemed to be exposed to citrus canker. The infected tree and the exposed trees are destroyed. The drawing of the 1900 foot radius is accomplished through a highly reliable computerized system using Geographic Information System coordinates.
6. The Department's actions in the Program are pursuant to Florida law. In particular, the Department may: "require the destruction of plants for the purpose of eradicating, controlling, or preventing the dissemination of citrus canker disease in this state," see § 581.184, Fla. Stat. (2000); establish quarantine areas, § 581.031(7), Fla. Stat. (2000); "enter into any place" to "inspect plants, plant products, or other things that may be capable of disseminating or carrying plant pests, noxious weeds or arthropods," see § 581.031(15)(a), Fla. Stat. (2000); "declare an emergency when one exists in any matter pertaining to agriculture ... and promulgate rules and issue orders which will be effective during the term of the emergency; ...," see § 570.07(21), Fla. Stat. (2000); and remove not only diseased plants, but also those "located in an area which may be suspected of being infested or infected due to its proximity to a known infestation"; see § 581.031(17), Fla. Stat. (2000). The radius of exposure has changed from zero feet (no exposed *1008 trees removed) to 125 feet to 1900 feet. The lawfulness of orders issued under the expanded radius has been upheld by the Third District. See Sapp Farms, Inc. v. Dep't of Agriculture, 761 So.2d 347 (Fla. 3d DCA 2000).
....
Plaintiffs do not dispute the 1900 foot measurement. Plaintiffs do dispute the status of the four properties as harboring infected trees, but fail to show a genuine issue as to a material fact requiring trial. The Affidavit of Mr. Bailey shows at least one property that harbored an infected tree.
This Court is bound by the decision of the Third District Court of Appeal in [Department of Agriculture v. Varela, 732 So.2d 1146 (Fla. 3d DCA 1999)] and the Florida Supreme Court in Polk. Plaintiffs' trees "have no marketable value" under Varela because they are within the 1900 foot zone of exposure to citrus canker, and thus Plaintiffs "have no cause of action" for the removal of such trees.
Patchen v. State Dep't of Agric. & Consumer Servs., No. 00-29271 CA 22, order at 3-5 (Fla. 11th Cir. Ct. Summary Final Judgment Apr. 23, 2001).
The 2002 statute clearly intends that the petitioners be included within the homeowners covered by section 581.1845(2) in that their citrus trees were removed as part of a citrus canker eradication program after January 1, 1995. Polk does not apply to these homeowners. Rather, these homeowners and others similarly situated who meet the requirements of section 581.1845(2)(a), (b), and (c), may receive compensation pursuant to that statute as construed and upheld in our decision in Haire v. Florida Department of Agriculture & Consumer Services, 870 So.2d 774 (Fla.2004). In Haire, we specifically stated:
In this case, we conclude that under the statutory scheme the State is obligated to provide more than token compensation if the State has destroyed a healthy, albeit exposed tree. Section 581.1845 expressly states that the specified per-tree amount "does not limit the amount of any other compensation that may be paid ... pursuant to court order for the removal of citrus trees as part of a citrus canker eradication program." § 581.1845(4) (emphasis supplied). Thus, the Citrus Canker Law sets a compensation floor that is consistent with the established principle that "the determination of what is just compensation ... is a judicial function that cannot be performed by the Legislature." [State Plant Board v. Smith, 110 So.2d 401, 407 (Fla.1959)] (quoting Spafford v. Brevard County, 92 Fla. 617, 110 So.2d 451, 454 (1926)).
In accord with our precedent, we conclude that the schedule established by the Legislature sets a floor but does not determine the amount of compensation. When the State destroys private property, the State is obligated to pay just and fair compensation as determined in a court of law. We emphasize that the fact that the Legislature has determined that all citrus trees within 1900 feet of an infected tree must be destroyed does not necessarily support a finding that healthy, but exposed, residential citrus trees have no value.
Id. at 785 (footnote omitted). The statute is remedial, and we give to the statute its plain meaning, which is to provide compensation to homeowners who had trees destroyed on or after January 1, 1995. See Golf Channel v. Jenkins, 752 So.2d 561, 566 n. 4 (Fla.2000).
In sum, we answer the certified question by holding that Department of Agriculture & Consumer Services v. Polk, 568 So.2d 35 *1009 (Fla.1990), does not apply. We quash the decision of the district court and remand for further proceedings in accord with this decision.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, and BELL, JJ., concur.
PARIENTE, C.J., concurs with an opinion.
LEWIS, J., concurs in result only with an opinion.
QUINCE, J., dissents with an opinion.
CANTERO, J., recused.
PARIENTE, C.J., concurring.
I concur in the majority opinion because, as construed in our decision in Haire v. Florida Department of Agriculture & Consumer Services, 870 So.2d 774, 785 (Fla.2004), section 581.1845(2), Florida Statutes (2004), requires the State to pay just and fair compensation for the destruction of the homeowners' citrus trees. The homeowners in this case, as well as similarly situated homeowners, are therefore in a better position than if we were to hold, as the dissent suggests, that they have a right to pursue an inverse condemnation claim. See dissenting op. at 1010. Holding that the statute applies under the circumstances of this case relieves the homeowners of the burden of proving that a taking occurred,[1] thereby eliminating the need to litigate issues such as whether the trees were a nuisance or presented an imminent danger. See dissenting op. at 1012.
LEWIS, J., concurring in result only.
I concur in the result to answer the Third District's certified question in the negative  that our decision in Polk does not apply to the Department's destruction of uninfected, healthy noncommercial, residential citrus trees within 1900 feet of trees infected with citrus canker  and to quash the decision of the Third District. However, I write to voice my disagreement with the majority opinion, which intentionally avoids discussion of common law rights and by implication holds today that the only remedy is pursuant to section 581.1845 of the Florida Statutes (2001), which attempted to retroactively provide a statutory right of "compensation to eligible homeowners whose citrus trees have been removed under a citrus canker eradication program," § 581.1845(1), Fla. Stat. (2001), but thereby negating an injured party's common law right to seek redress and existing remedy.
Although the statute purports to give rights to eligible homeowners, the common law right to seek redress and remedy remains and that right cannot be erased through this legislation. If the only remedy available to the injured party is statutory, the Legislature could abrogate that right as easily as it was granted. See Yaffee v. Int'l Co., 80 So.2d 910, 912 (Fla.1955) ("[W]hen the statute is repealed the right or remedy created by the statute falls with it."). The legislation in the instant case cannot and does not provide statutory rights and remedies retroactively to negate and to the exclusion of common law rights and remedies. The common law basis for recovery remains, notwithstanding the statute. In my view, the majority's application of this statute exclusively without mention of the fundamental common law right is an attempt to cause this statute to operate to eviscerate an injured party's existing common law right. See Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1358 (Fla.1994) ("A substantive *1010 statute is presumed to operate prospectively rather than retrospectively ... when retrospective operation of a law would impair or destroy existing rights.") (citations omitted). Under these circumstances, the affected parties may have both statutory and common law relief available but not as presented by the majority.
QUINCE, J., dissenting.
I cannot agree with the majority that this case is controlled by section 581.184, Florida Statutes (2002), because that statutory provision, allowing for the destruction of citrus trees that are located within 1900 feet of an infected tree, was not in existence at the time the Patchens' cause of action against the Department arose. I would hold that the Patchens have a right to pursue their inverse condemnation claim for the destruction of their residence's citrus trees.
The Patchens brought a claim for inverse condemnation when, in October 2000, their healthy, residential citrus trees were destroyed. The Department moved for summary judgment based upon evidence that the Patchens' trees were exposed to citrus canker. The trial court granted summary judgment. The Third District affirmed, and held that the Patchens were not entitled to reimbursement in an inverse condemnation action because "[s]uch property is incapable of any lawful use, it is of no value, and it is a source of public danger." Patchen v. State Dep't of Agric. & Consumer Servs., 817 So.2d 854, 855 (Fla. 3d DCA 2002) (quoting Dep't of Agric. & Consumer Servs. v. Polk, 568 So.2d 35, 40 (Fla.1990)).
The certified question in this case asks this Court to consider whether Department of Agriculture & Consumer Services v. Polk, 568 So.2d 35 (Fla.1990), which held that the valid exercise of police power to destroy healthy commercial citrus trees did not compel state reimbursement, applied in a case like this, where the State destroyed healthy residential citrus trees. The majority has found that Polk is not applicable to this case, and that this case is resolved by the application of section 581.1845(2) Florida Statutes, and Haire v. Florida Department of Agriculture & Consumer Services, 870 So.2d 774 (Fla.2004). I agree with the majority that Polk is not applicable to this case. However, I do not agree that section 581.1845(2) and Haire sufficiently answer the certified question because neither the statute nor the case law was in effect at the time the cause of action arose.
The majority has called section 581.1845(2) remedial in nature. This Court has recognized that the presumption in favor of prospective application generally does not apply to "remedial" legislation; rather, whenever possible, such legislation should be applied to pending cases in order to fully effectuate the legislation's intended purpose. See Arrow Air, Inc. v. Walsh, 645 So.2d 422, 424 (Fla.1994); City of Orlando v. Desjardins, 493 So.2d 1027 (Fla.1986). However, this Court has never classified a statute that accomplishes a remedial purpose by creating substantive new rights or imposing new legal burdens as the type of "remedial" legislation that should be presumptively applied in pending cases. See L. Ross, Inc. v. R.W. Roberts Constr. Co., 481 So.2d 484 (Fla.1986) (holding that statute creating right to attorney's fees could not be applied retroactively); City of Lakeland v. Catinella, 129 So.2d 133, 136 (Fla.1961) (holding that only statutes that do not create new or take away vested rights are exempt from the general rule against retrospective application). In this case the statute creates a new right to recover a certain sum of money, and the majority's solution to limit the Patchens' remedy to that afforded in section 581.1845(2), without expressly holding that the summary denial of the Patchens' *1011 inverse condemnation claim was erroneous, effectively denies the Patchens a vested right to pursue such a claim.
In Polk, this Court was asked to determine whether the destruction of citrus trees to prevent the spread of a bacterial disease was a taking entitling the property owner to just compensation in an inverse condemnation action. The trial court found that the Department's action constituted an unconstitutional taking. However, the court noted that those trees that were actually diseased, and those within 125 feet of the diseased trees, had no marketable value and the Department did not have to compensate Polk for the trees with no marketable value. Relying upon our decision in Department of Agriculture & Consumer Services v. Mid-Florida Growers, Inc., 521 So.2d 101 (Fla.), cert. denied, 488 U.S. 870, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988), this Court affirmed the trial court's determination "based upon a review of the record, that there was substantial competent evidence presented at the liability phase to support the trial court's finding that Polk was entitled to compensation for all nursery stock destroyed except for those trees exhibiting symptoms of the bacterial disease and those located within 125 feet." Polk, 568 So.2d at 40. We concluded that the Department's destruction of diseased trees and trees located 125 feet from a diseased tree did not constitute a taking for purposes of just compensation because the trees had no market value. However, we also concluded that the property owner was entitled to compensation for all the other trees which were destroyed by the Department. In this case, however, we have no record to determine whether there is substantial competent evidence to support the determination that the Patchens' destroyed trees have no market value. Thus, Polk is in a different procedural posture than this case, and is not applicable.
Section 581.1845(2) does not resolve this case. That statute provides that certain homeowners who have had one or more residential citrus trees removed from their property by a tree-cutting contractor as part of a citrus canker eradication program on or after January 1, 1995, may receive compensation in the amount of $55 per tree. Although this statute is remedial and reaches back to events occurring on or after January 1995, as explained above, this statute should not be applied retroactively.
The decision in Haire addresses the constitutionality of section 581.184, Florida Statutes (2003) (Citrus Canker Law), which contains the statutory authority for the Department to destroy privately owned citrus trees under its Citrus Canker Eradication Program. In Haire, this Court discussed section 581.1845 and noted that the subsection addressing compensation was to expire July 1, 2004. See Haire, 870 So.2d at 779. The Court also noted that compensation under this statute is "subject to the availability of appropriated funds." § 581.1845(1). Although our decision in Haire supports the conclusion that the homeowner may seek additional compensation to that awarded by statute, like the statute, Haire was not decided until after the Patchens had filed an action for inverse condemnation.
I would find that the district court erred by holding that the Patchens' claim for inverse condemnation was precluded as a matter of law. Inverse condemnation is a cause of action to recover the value of property by a property owner against an agency which has taken private property without a formal exercise of the power of eminent domain. See Rubano v. Dep't of Transp., 656 So.2d 1264, 1266 (Fla.1995).[2] *1012 The First District has defined inverse condemnation as
a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency. Thornburg v. Port of Portland, 233 Or. 178, 376 P.2d 100 (1962); Martin v. Port of Seattle, 64 Wash.2d 309, 391 P.2d 540 (1964). To the same effect but using different words, the New York Supreme Court, Appellate Division, in Trippe v. Port of New York Authority, 17 A.D.2d 472, 236 N.Y.S.2d 312 (1962) said that inverse condemnation is a method of compensation wherein "an owner asserting a claim for appropriation of his property may pursue his right by an action in equity for an injunction, and for damages; the court may then, as an alternative to the injunction, make an award for the taking."
City of Jacksonville v. Schumann, 167 So.2d 95, 98-99 (Fla. 1st DCA 1964); see also State Road Dept. v. Tharp, 146 Fla. 745, 1 So.2d 868, 869-70 (1941). "The full compensation required by the Constitution in a direct condemnation action is equally required in inverse condemnation proceedings...." Stewart v. City of Key West, 429 So.2d 784, 785 (Fla. 3d DCA 1983). Damages in an inverse condemnation action are assessed based on the value of the property on the date of the taking. See County of Volusia v. Pickens, 439 So.2d 276, 277 (Fla. 5th DCA 1983).
The district court's determination that the citrus trees had no value as a matter of law was in error because there had not been, at the time these trees were destroyed, any legislative determination or agency rule declaring that all trees located within 1900 feet of an infected tree were a nuisance or imminently dangerous; therefore, there must be a judicial determination of whether a compensable taking has occurred.[3] Additionally, the trial court must conduct an individualized analysis, make factual findings as to the value, if any, of the destroyed property, and determine whether the Patchens' trees were a nuisance or presented an imminent danger.
*1013 I would therefore quash the Third District's decision and remand this case to the trial court for an evidentiary hearing on the disputed issues of fact. While I believe that an evidentiary hearing on the disputed issues is proper, I do not agree with the majority that this case can be resolved by applying section 581.1845(2), Florida Statutes, and Haire v. Florida Department of Agriculture & Consumer Services, 870 So.2d 774 (Fla.2004). Application of a statute and case law that were not promulgated at the time this cause of action arose is inappropriate and does not fully resolve the issues presented by the certified question. I would also hold that the Patchens are entitled to a factual finding on the issue of damages.
NOTES
[1] See Rubano v. Dep't of Transp., 656 So.2d 1264, 1266 (Fla.1995) ("Proof that the governmental body has effected a taking of the property is an essential element of an inverse condemnation action.").
[2] A taking has been defined as the "entering upon private property for more than a momentary period and `under the warrant or color of legal authority,' devoting it to public use or otherwise informally appropriating or injuriously affecting it in such a way substantially to oust the owner and deprive him of all beneficial enjoyment thereof." Kirkpatrick v. City of Jacksonville, 312 So.2d 487, 489 (Fla. 1st DCA 1975) (quoting 12 Fla. Jur. 48, Eminent Domain § 68). A taking may consist of a negative act, such as destruction. See id. at 490. "There is no settled formula for determining when the valid exercise of police power stops and an impermissible encroachment on private property rights begins." Graham v. Estuary Properties, Inc., 399 So.2d 1374, 1380 (Fla.1981). Whether a regulation is a valid exercise of the police power or a taking depends on the circumstances of each case. See id.
[3] This Court has required the State to compensate property owners whose healthy trees were destroyed where there was no evidence that the trees were imminently dangerous. See State Plant Bd. v. Smith, 110 So.2d 401, 408 (Fla.1959); Corneal v. State Plant Bd., 95 So.2d 1, 6-7 (Fla.1957). However, in those cases this Court considered whether a rule requiring the destruction of citrus trees in spreading decline zones, healthy or otherwise, without compensation to the owner was a valid exercise of the agency's power. Courts have recognized that citrus canker differs greatly from spreading decline, the citrus disease at issue in Smith and Corneal. Spreading decline is a citrus disease caused by a burrowing nematode. The disease, unlike citrus canker, is not carried by the wind or by insects from grove to grove. See Sapp Farms v. Fla. Dep't of Agric. & Consumer Servs., 761 So.2d 347 (Fla. 3d DCA 2000); Nordmann v. Fla. Dep't of Agric. & Consumer Servs., 473 So.2d 278 (Fla. 5th DCA 1985); Denney v. Conner, 462 So.2d 534 (Fla. 1st DCA 1985).