FARMER, J.
The Florida Department of Agriculture and Consumer Services (DACS) appeals a final judgment in favor of a class of more than 50,000 owners of healthy citrus trees in Broward County cut down and destroyed by DACS as part of its citrus canker eradication program (CCEP).[1] *87 The trial judge found that over 100,000 non-commercial trees in the County not affected with citrus canker had been taken and destroyed by DACS during the covered period, that the taking was for a public purpose, and that the owners of these residential trees were entitled to just and fair compensation for their healthy trees. A jury then found that just compensation for the class was $11,531,463. After applying certain setoffs and adding pre-judgment interest, the court entered judgment against DACS and the State of Florida in the amount of $8,043,542.
On appeal, DACS essentially argues:
A. The trial court improperly rejected its evidence in favor of the evidence offered by the plaintiff class.
B. No inverse condemnation was shown because the trees lacked any compensable value, citrus canker being deemed a public nuisance as a matter of law, and the trial court applied the wrong test for determining whether there had been a taking.
C. The legislature has abolished any common law claim of inverse condemnation and replaced it with a statutory claim.
D. The court applied the wrong measure of damages for the healthy trees destroyed in the CCEP.
E. No pre-judgment interest is allowed in this case.
There is no merit in any of these arguments.

A. Whose evidence and science was more reliable and credible?

When the contention is that the trier of fact has rejected what a party believes is the better evidence, both lay and expert, the supreme court has explained:
“It is clear that the function of the trial court is to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor and credibility of the witnesses appearing in the cause. It is not the function of the appellate court to substitute its judgment for that of the trial court through re-evaluation of the testimony and evidence from the record on appeal before it. The test ... is whether the judgment of the trial court is supported by competent evidence. Subject to the appellate court’s right to reject ‘inherently incredible and improbable testimony or evidence,’ ... it is not the prerogative of an appellate court, upon a de novo consideration of the record, to substitute its judgment for that of the trial court.” [e.s.]
Shaw v. Shaw, 334 So.2d 13, 16 (Fla.1976). Moreover, when specific findings of fact on discrete conflicts in the evidence are not made by the trial judge or by a jury in a special interrogatory verdict, we are required to accept those facts shown by the evidence as favoring the prevailing party.[2] On all the factual claims made by DACS in this appeal, the settled facts are not as it represents. Instead the evidence establishes quite the contrary.
*88 There is substantial competent evidence that healthy, privately owned citrus trees are not harmful or destructive, even though found within 1,900 feet of a tree having citrus canker. There is evidence in the record that the healthy trees taken under the CCEP had continued to produce the fruit, the juice, the shade, the pleasing aromas, the agreeable vistas — all the virtues for which their owners carefully planted and tended them. There was expert testimony that no study using an acceptable scientific method supports a conclusion that healthy trees so situated will necessarily develop citrus canker or bring trouble or damage to anybody. DACS has failed to show error here.
Moreover the finder of fact is free to determine the reliability and credibility of expert opinions and, if conflicting, to weigh them as the finder sees fit.[3] Even when expert testimony is unchallenged, the finder of fact is free to weigh the opinion, just as it does with any other witness, and reject such testimony.[4] We routinely instruct juries that it is their function to resolve conflicts and to reject an expert’s testimony and rely on other record evidence.[5] Although an expert’s opinion may seem forcefully and unequivocally influential, in weighing all the evidence the jury may still apply its knowledge and experience and rely on other evidence.[6]
By its argument, DACS is attempting to have a reviewing court decide which side’s evidence — scientific and otherwise— should be accepted as a matter of law, and which to reject. We are not able to engage in that kind of review. As the foregoing authorities establish, it is solely the province of the finder of fact to determine which science is real, which evidence is most reliable. None of the evidence supporting the judgment is inherently incredible or improbable. Both the judge (as to the takings) and the jury (as to just compensation) simply thought the evidence and science of the class of plaintiffs was the more reliable and credible. We must accept those decisions, for they are based on substantial competent evidence.

B. Inverse condemnation; value of trees; public nuisance; test for taking.

 DACS argues it is not liable for any damages as a matter of law because *89 healthy trees exposed to citrus canker constitute a public nuisance having no value, that exposed citrus will itself develop canker and become worthless. It is apparent from the history of this case that DACS destroyed these privately owned healthy trees not because they were really “imminently dangerous” to anybody but instead to benefit the citrus industry in Florida. See Dep’t of Agric. & Consumer Servs. v. Haire, 836 So.2d 1040, 1050 (Fla. 4th DCA 2003) (“because protecting the citrus industry benefits the public welfare, it is within the state’s police power to summarily destroy trees to combat citrus canker”). To be a public nuisance, property must cause “inconvenience or damage to the public generally.”[7] If trees are destroyed not to prevent harm but instead to benefit an industry, it is difficult to understand how DACS can argue on appeal that the trees legally constituted a nuisance without any value. Property with any value cannot be deemed a nuisance, the nature of which perforce lacks that redeeming quality.
Here again DACS asks us to prefer evidence it presented to the takings judge, and then to the jury, and disregard the contrary evidence on which both relied in making their decisions. “Whether regulatory action of a public body amounts to a taking must be determined from the facts of each case ... and the trial judge in an inverse condemnation suit is the trier of all issues, legal and factual, except for the question of what amount constitutes just compensation.” Dep’t of Agric. & Consumer Servs. v. Mid-Florida Growers Inc., 521 So.2d 101, 104 (Fla.1988) (“Mid-Florida Growers I ”). A trial court’s finding of liability in an inverse condemnation suit is presumed correct and its findings will not be disturbed on appeal if supported by competent, substantial evidence. Atl. Int’l Inv. Corp. v. State, 478 So.2d 805, 808 (Fla.1985).
It has long been acknowledged that a “physical invasion” of private property is the clearest example of a governmental taking for which just compensation is due. See e.g. United States v. Gen. Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945) (destruction of property constitutes a taking); United States v. Welch, 217 U.S. 333, 339, 30 S.Ct. 527, 54 L.Ed. 787 (1910) (agency destroyed easement by flooding: “if it were ... destroyed and ended, a destruction for public purposes may as well be a taking as would be an appropriation for the same end”); Corneal v. State Plant Bd., 95 So.2d 1, 6 (Fla.1957) (“We have found no case — and none has been cited — holding that a healthy plant or animal, not imminently dangerous, may be destroyed without compensation to the owner in order to protect a neighbor’s plant or animal of the same specie” [e.o.]); Kendry v. State Rd. Dept., 213 So.2d 23 (Fla. 4th DCA 1968) (flooding resulted in taking).[8]
DACS argues that the trial judge used the wrong legal test for regulatory takings. Frankly it is difficult to understand how the test used would be error. It is true that whether a regulation amounts to a taking may depend on the unique circumstances of the case, and the court’s factual inquiry may change from case to case. See Rubano v. Fla. Dep’t of Transp., 656 So.2d 1264, 1266 (Fla.1995). But in Graham v. Estuary Properties Inc., 399 So.2d 1374 (Fla.1981), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981), the court recognized no settled for *90 mula to determine where a valid exercise of the police power ends and a taking of property begins. The court did discuss some non-exclusive factors, the first of which (physical invasion or destruction) is dispositive under the facts of this case.
The facts of this case require no application of multi-part, recondite tests to decide whether the State regulation has gone too far and must pay just compensation. Cutting down and destroying healthy non-commercial trees of private citizens could hardly be more definitively a taking.[9] Government has regulatory power for the very purpose of safeguarding the rights of citizens, not for destroying them. Under any possible meaning, if government cuts down and burns private property having value, then government has taken it. And if government has taken it, government must pay for it.
To the argument that the Legislature has labeled citrus canker a public nuisance, it is also settled that “a State, by ipse dixit, may not transform private property into public property without compensation.” [e.o.] Webb’s Fabulous Pharm. Inc. v. Beckwith, 449 U.S. 155, 164, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980); see also Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1031, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (“South Carolina must do more than proffer the legislature’s declaration that the uses Lucas desires are inconsistent with the public interest, or the conclusory assertion that they violate a common-law [for public nuisance]”).

C. Common law and statutory claims of inverse condemnation.

DACS argues that the Legislature eliminated the common law claim for inverse condemnation of citrus trees and replaced it with an exclusive statutory claim.[10] Like most of the arguments of DACS in this dispute, it seems to have been made without regard to history, positive law or precedent. More than a half century ago in State Plant Board v. Smith, 110 So.2d 401 (Fla.1959), a case involving a predecessor agency of DACS also destroying healthy citrus plants to eradicate a plant disease, the court made very clear that “where, as here, a [constitutional] provision for ‘just compensation’ is a clear requisite to the act of destruction, then we find no authority for the Legislature’s specification of the maximum compensation to be paid.” 110 So.2d at 407. That decision eliminated any basis to argue the contrary as DACS seeks to do here.
Then again, little more than 20 years ago, in Mid-Florida Growers I, another case also involving a state agency’s destruction of healthy citrus plants to eradicate a plant disease, the supreme court reaffirmed State Plant Board in holding that constitutional just compensation “was a clear requisite ... to the act of destroying healthy trees.” 521 So.2d at 104. Even more emphatically, the court added: “Because article X, § 6, Fla. Const, is self-executing, it is immaterial that there is no statute specifically authorizing recovery for loss.” 521 So.2d at 104 n. 2 [c.o.].
If it is not yet clear, the point is that the common law and statutory provisions for inverse condemnation do not displace the constitutional requirement for just compensation when the State destroys privately owned property to aid some in *91 dustry. The only effect of § 581.1845 is to set an opening bid for the price the State will pay without litigation. As the court said in Patchen v. Fla. Dep’t of Agric. & Consumer Servs., 906 So.2d 1005, 1008 (Fla.2005):
“Citrus Canker Law sets a compensation floor that is consistent with the established principle that ‘the determination of what is just compensation ... is a judicial function that cannot be performed by the Legislature’” [quoting Haire, 870 So.2d at 785 (quoting State Plant Board, 110 So.2d at 407 (quoting Spafford v. Brevard County, 92 Fla. 617, 110 So. 451, 454 (1926))) ].
If the compensation required by the Constitution exceeds a statutory amount, the State will have to pay that amount.

D. The measure of damages.

DACS argues that the trial court instructed the jury as to the wrong measure of damages. In takings cases, “the proper valuation method or methods for any given ease are inextricably bound up with the particular circumstances of the case.” [11] In this dispute we previously rejected this identical argument when DACS appealed class certification. Fla. Dept. of Agri. & Consumer Servs. v. City of Pompano Beach, 829 So.2d 928 (Fla. 4th DCA 2002), rev. denied, 845 So.2d 889 (Fla.2003) (appeal of class certification, rejecting argument that as matter of law class claims are not compensable and finding no error in using replacement value for destruction of healthy trees). The trial court credited the testimony of the two expert witnesses for the class that replacement cost is the only measure used by arborists familiar with the trade. In fact the trial court took note of the fact that DACS itself directed a staff employee to research the replacement cost of the trees before the subject version of the CCEP was adopted and implemented.
We also find no error in the trial judge’s decision not to rely on DACS witnesses who used the reduction in value of real estate as the measurement. It seems apparent to us that the issue here was not the value of the existing real estate but the value of the trees destroyed.

E. Pre-judgment interest.

The jury assessed class compensation of $11,531,463, determining that DACS was entitled to set-offs equal to the amounts actually used by the class on their retail gift cards and the $55 statutory tree payments. After deducting these set-offs (which were stipulated as $7,196,370), the amount of the judgment was $4,335,093, before pre-judgment interest.
The plaintiff class sought prejudgment interest from the date their property was destroyed by DACS, consistent with the eminent domain statute and established precedent in takings cases.[12] We agree that the trial judge did not err by calculating pre-judgment interest from the filing date of the case, while giving DACS credit for set-offs in the year in which they were actually provided. This procedure was consistent with the statute and prior decisions upholding pre-judgment interest in takings cases.
*92 In this regard, we note that — over the objections of the certified class — DACS sought and was granted an aggregate verdict, even though the takings involved thousands of trees over a period of time. Consistent with this aggregation, no error is shown in the trial court’s calculation of interest from the date this action was filed. It does not strike us as unfair to DACS to fix the date of loss for purposes of prejudgment interest as the filing date of the class action for so many trees taken from so many owners on so many different dates.[13] The date of filing was necessarily well after the actual dates of destruction for many trees and thus benefits DACS.
Finally on a procedural issue, any error in the denial of a stay pending non-final review of the trial court’s order requiring DACS to fund the cost of notice to the class could be seen as rendered moot by the takings judgment and the verdict on just compensation. As the party taking the property, the State is obviously liable for these costs. But we agree with the class that stays pending review are within the supreme court’s exclusive authority over procedural rules in judicial review. See Fla. R.App. P. 9.310; St. Mary’s Hosp. v. Phillipe, 769 So.2d 961 (Fla.2000) (statute limiting right of malpractice defendant to stay arbitration award did not unconstitutionally infringe rule expressly requiring automatic stay of money judgment by posting bond because defendants voluntarily participated in statutory arbitration process and thus also agreed to different stay procedure in statute).
We find no error shown in any other arguments made by DACS.

Affirmed.

TAYLOR, J., concurs.
LEVINE, J., concurs specially with opinion.

. For a history of prior review in this case, see:
(1) Fla. Dep’t of Agric. & Consumer Servs. v. City of Pompano Beach, 792 So.2d 539 (Fla. *87 4th DCA 2001);
(2) Fla. Dep’t of Agric. & Consumer Servs. v. City of Pompano Beach, 829 So.2d 928 (Fla. 4th DCA 2002), rev. denied, 845 So.2d 889 (Fla.2003);
(3) Fla. Dep’t of Agric. & Consumer Servs. v. Haire, 836 So.2d 1040 (Fla. 4th DCA 2003), rev. granted, 842 So.2d 844 (Fla.2003);
(4) Haire v. Fla. Dept. of Agric. & Consumer Servs., 870 So.2d 774 (Fla.2004); and
(5) Fla. Dept. of Agric. & Consumer Servs. v. Cox, 947 So.2d 561 (Fla. 4th DCA 2006), rev. denied, 962 So.2d 336 (Fla.2007).

. New Nautical Coatings Inc. v. Scoggin, 731 So.2d 145 (Fla. 4th DCA 1999); S. Bell Tel. & Tel. Co. v. Broward County, 665 So.2d 272, 274 (Fla. 4th DCA 1995); NCNB Nat’l Bank of Fla. v. Aetna Cas. & Sur. Co., 477 So.2d 579, 583 (Fla. 4th DCA 1985).

. Easkold v. Rhodes, 614 So.2d 495, 498 (Fla.1993); Vorsteg v. Thomas, 853 So.2d 1102, 1103 (Fla. 4th DCA 2003).

. Behm v. Div. of Admin., State Dept. of Transp., 336 So.2d 579 (Fla.1976) (jury’s function is to weigh credibility and reliability of expert testimony; expert opinion is worth no more than reasons on which it is based; if properly susceptible to differing interpretations jury is free to make such interpretations); Rosenbloom v. Rosenbloom, 892 So.2d 531, 535 (Fla. 4th DCA 2005) (trier of fact not bound by testimony of expert witnesses even where unrebutted); Southpointe Homeowners Ass’n Inc. v. Segarra, 763 So.2d 1186, 1187 (Fla. 4th DCA 2000) (trial judges are not bound by unrebutted expert testimony); Baldwin Piano & Organ Co. v. Dote, 740 So.2d 1230 (Fla. 4th DCA 1999); County of Sarasota v. Burdette, 479 So.2d 763, 764 (Fla. 2d DCA 1985) (jury could return verdict for amount less than maximum sought by landowner because jury determines weight and credibility to be given expert’s testimony).

. See Fla. Std. Juiy Instr. (Civ.) 2.2b ("You may accept such opinion testimony, reject it, or give it the weight you think it deserves, considering the knowledge, skill, experience, training, or education of the witness, the reasons given by the witness for the opinion expressed, and all the other evidence in the case”); Shaw v. Puleo, 159 So.2d 641, 644 (Fla.1964), modified on other grounds, Griffis v. Hill, 230 So.2d 143 (Fla.1969); Gulf Life Ins. Co. v. Shelton, 155 Fla. 586, 21 So.2d 39 (1945).

. Trolinger v. State, 300 So.2d 310 (Fla. 2d DCA 1974), cert. denied, 310 So.2d 740 (Fla.1975).

. Orlando Sports Stadium Inc. v. State ex rel. Powell, 262 So.2d 881, 884 (Fla.1972).

. See also Penn. Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922) (regulatory action that goes too far is taking).

. Corneal, 95 So.2d at 1, 6-7 (holding that Plant Board had clear legal duty to pay just compensation to owners of healthy citrus trees destroyed under a compulsory program).

. See § 581.1845, Fla. Stat. (2004).

. Fla. Dep’t of Agric. & Consumer Servs. v. Mid-Florida Growers Inc., 570 So.2d 892, 895 (Fla.1990) (Mid-Florida Growers II) (quoting Dade County v. Gen. Waterworks Corp., 267 So.2d 633, 639 (Fla.1972)).

. See § 74.061, Fla. Stat. (2008); Behm v. Div. of Admin., State Dept. of Transp., 383 So.2d 216, 218 (Fla.1980); State Rd. Dep’t v. Bender, 147 Fla. 15, 2 So.2d 298 (1941) (interest awarded from date of taking); County of Volusia v. Pickens, 439 So.2d 276, 277 (Fla. 5th DCA 1983) (prejudgment interest based on value of property from date of taking).-

. See Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla.1985) (for purpose of assessing pre-judgment interest, claim becomes liquidated when verdict has effect of fixing damages as of prior date).