WARNER, J.
The Department of Agriculture appeals an award of attorney’s fees in a class action for inverse condemnation in which the class prevailed. Primarily, it argues that the court erred by not using the “benefits achieved” standard of section 73.091, Florida Statutes (2009), when the Department made a “written offer” to the class members by sending each of them a letter enclosing an application for compensation provided under section 581.1845, Florida Statutes (2001). We hold that the letter was not a written offer as contemplated by the statute. With the exception of fees incurred by the class attorney representing other clients in related litigation, we affirm the award. With respect to costs, we reverse the expert witness fee incurred in providing testimony as to the amount and reasonableness of the fee, as this is not a recoverable cost.
To combat citrus canker disease, a threat to the commercial citrus industry, the Department developed a citrus canker eradication program (CCEP), which was eventually enacted into statute in section 581.1845, Florida Statutes (2001). It provided for the destruction of citrus trees within a 1900-foot radius of any tree infected with the canker virus. Haire v. Department of Agriculture, 870 So.2d 774, 778-80 (Fla.2004), documents the history of eradication efforts in Florida.
*252 The plaintiffs, homeowners who owned trees which the Department destroyed, brought a class action for inverse condemnation of all the residential citrus trees destroyed in Broward County under CCEP. The trial court certified a class, which this court affirmed in Florida Department of Agriculture and Consumer Services v. City of Pompano Beach, 829 So.2d 928 (Fla. 4th DCA 2002).
While class certification was pending, a couple in Miami, the Patchens, brought an action for inverse condemnation of their citrus trees. In that case, the trial court granted summary judgment to the Department, which the Third District affirmed in Patchen v. State Department of Agriculture and Consumer Services, 817 So.2d 854 (Fla. 3d DCA 2002) (Patchen I), holding that the Department was not liable for compensation for destroying uninfected trees within the 1900-foot radius of an infected tree. The court relied on Department of Agriculture and Consumer Services v. Polk, 568 So.2d 35 (Fla.1990), which held that trees, within the radius of an infected tree, for which the Department compelled destruction, had no marketable value. Because the ruling in Patchen I would have eliminated compensation in this suit, class counsel filed an amicus brief on behalf of the class in the Third District court. When that court certified a question to the supreme court, class counsel then represented the Patchens before the supreme court. The supreme court held that the rule of Polk did not apply to homeowners who were entitled to seek compensation pursuant to section 581.1845, Florida Statutes (2004). See Patchen v. Fla. Dep’t of Agric. & Consumer Servs., 906 So.2d 1005, 1008 (Fla.2005) (Patchen II).
The class action in Broward County then proceeded to a non-jury trial in which the trial court determined that a taking had occurred when the Department destroyed the homeowners’ uninfected citrus trees. A jury trial followed to determine just compensation for the taking. The jury awarded $11,531,463 in compensation for the trees, less the $7,196,370 which the Department had already paid out as compensation based upon section 581.1845, Florida Statutes (2001), and the Department’s earlier Shade Tree Program, resulting in a net verdict of $4,335,093. Class counsel then moved for attorney’s fees.[1]
Subsequently, the Department appealed the final judgment in Department of Agriculture and Consumer Services v. Bogorff, 35 So.3d 84 (Fla. 4th DCA 2010). This court affirmed on all issues raised by the Department. We also awarded class counsel attorney’s fees on appeal.
When the case returned to the trial court, the trial court conducted a five day hearing on attorney’s fees, in which the property owners requested an award of fees for the entire ten year period of litigation. The Department argued that fees should be computed under the sliding scale of section 73.092(1), Florida Statutes (2009), rather than under the multi-factor analysis of section 73.092(2), Florida Statutes (2009). Section 73.092(1) requires that an attorney’s fee award be based solely on the benefits received by the property owner, measured from the condemning authority’s last written offer to the property owner prior to the owner hiring an attorney. The Department contended that it made written offers when it sent applications for the statutorily authorized payments and Shade Florida debit cards to all *253 of the affected property owners in Bro-ward County.
The Department sent two different letters to homeowners on whose property the Department destroyed citrus trees during the CCEP. The record is unclear as to when the first letter was sent, but it advised homeowners of the opportunity to obtain a replacement tree through the Shade Florida program authorized by the State of Florida and United States Department of Agriculture. Homeowners could receive plastic cards which would allow them to purchase new trees at Wal-Mart if they would return a completed postcard. This letter never mentioned compensation nor any other rights the homeowner may have for destruction of the trees.
The Department sent the second letter after the Legislature had enacted section 581.1845, Florida Statutes (2001). This letter was sent after the class in this case was certified. The letter advised the homeowner of a cash payment allowed for destroyed trees by virtue of the enactment of section 581.1845. Homeowners could participate in the program by returning a postcard with necessary information in order to receive the payment. In bold, the letter said, “By signing the postcard and receiving the payment, you do not waive your right to participate in litigation that may arise as a result of the Citrus Canker Eradication Program.”
The trial court rejected the Department’s position that the letters were “written offers” within the meaning of section 73.092(1). Not only did it find that the offer of Shade Tree cards was “gratuitous,” it also relied on the testimony of Deputy Commissioner of Agriculture Craig Meyer, who was in charge of the CCEP. Meyer testified that the cash payments and Shade Tree cards were the Legislature’s effort to show “respect” to the homeowners who lost their trees. In other words, he maintained that the payments were not compensation for the destroyed trees.
Alternatively, the Department also argued that class counsel’s compensation should be limited by the rules of professional conduct and the contract between one member of class counsel and one client. The court also dismissed these contentions.
In two orders, one 12 pages long and one 57 pages long, which thoroughly analyzed all of the issues, the trial court ultimately awarded attorney’s fees using the multi-factor analysis of section 73.092(2). The court awarded $4,245,445.75 for 7890.76 hours of work performed by multiple attorneys. The court used the hourly rates to which the plaintiffs’ expert testified, as those rates were close to the hourly rates charged by most of class counsel for non-contingent matters. Based on the Supreme Court’s decision in Perdue v. Kenny A., 559 U.S. 542, 556, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010), the court used the class counsels’ current hourly rates, rather than historic rates, to calculate the amount of fees. The Department appeals the final judgment awarding fees.

Rejection of Section 73.092(1) as Basis of Award of Attorney’s Fees

Just as the state must pay for the landowner’s attorney’s fees in cases where it initiates a taking of private property, so too must the state pay attorney’s fees when a property owner proves that the state has taken the landowner’s property in an inverse condemnation case. See Schick v. Dep’t of Agric. & Consumer Servs., 599 So.2d 641, 642 n. 3 (Fla.1992). Because the right to fees in an eminent domain proceeding is statutory, fees awarded in an inverse condemnation also must be determined within the statutory framework of section 73.091 and 73.092. Id.
*254 Section 73.092 contains two different methods of determining attorney’s fees in eminent domain proceedings. Section 73.092(1) provides that attorney’s fees must be calculated based upon benefits achieved:
(1) Except as otherwise provided in this section and s. 73.015, the court, in eminent domain proceedings, shall award attorney’s fees based solely on the benefits achieved for the client.
(a)As used in this section, the term “benefits” means the difference, exclusive of interest, between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney. If no written offer is made by the condemning authority before the defendant hires an attorney, benefits must be measured from the first written offer after the attorney is hired.
The statute also provides in 73.092(2) for a multi-factor analysis in cases where section 73.092(1) does not apply:
(2) In assessing attorney’s fees incurred in defeating an order of taking, or for apportionment, or other supplemental proceedings, when not otherwise provided for, the court shall consider:
(a) The novelty, difficulty, and importance of the questions involved.
(b) The skill employed by the attorney in conducting the cause.
(c) The amount of money involved.
(d) The responsibility incurred and fulfilled by the attorney.
(e) The attorney’s time and labor reasonably required adequately to represent the client in relation to the benefits resulting to the client.
(f) The fee, or rate of fee, customarily charged for legal services of a comparable or similar nature.
(g)Any attorney’s fee award made under subsection (1).
The Department challenges the trial court’s rejection of section 73.092(1) as the appropriate method for calculating the fee. In order to utilize section 73.092(1), the condemning authority must have submitted a written offer to the property owner. The trial court concluded that the Department’s offer of Shade Tree cards as well as cash payments were not “written offers” within the meaning of the statute. The court viewed the word “offer” as a term of art, and ruled that the Department did not submit a written offer to the class. We agree with the trial court.
Whether the trial court has applied the correct law in determining whether a writing constitutes a written offer under section 73.092(1) is a question of law reviewed de novo. See Pompano Beach Cmty. Redev. Agency v. Holland, 82 So.3d 1034, 1036 (Fla. 4th DCA 2011).
Section 73.092(1) does not define what constitutes a “written offer” for purposes of determining the benefits received by the client. “It is an accepted maxim of statutory construction that a law should be construed together with and in harmony with any other statute relating to the same subject matter or having the same purpose, even though the statutes were not enacted at the same time.” Garner v. Ward, 251 So.2d 252, 255 (Fla.1971). Section 73.092(1) refers to 73.015, which provides further context for what constitutes a written offer.
Section 73.015 requires presuit negotiations for any condemnation proceeding. Prior to the institution of condemnation proceedings, the condemning authority must provide the fee owner with a “written offer” and, if requested, a copy of the appraisal. § 73.015(1), Fla. Stat. (2009). In addition, no later than the written offer, the condemning authority must notify the *255 owner of various requirements, including the nature of the project for which the taking is considered necessary and the fee owner’s statutory rights under section 73.091 and 73.092. § 73.015(l)(a), Fla. Stat. (2009). The notice and written offer must be sent by registered mail or personally delivered to the owner. § 73.015(l)(c), Fla. Stat. (2009). Considering the two statutes together, they contemplate that the condemning authority is exercising its power of eminent domain and prior thereto must submit a written offer to acquire the property.
We are skeptical as to how this statute would ever directly apply to an inverse condemnation proceeding, where the state has already taken the property of the owner without compensation and contests the fact that it has engaged in any taking of property for which it owes compensation. Nevertheless, applying case law discussing what constitutes a written offer in eminent domain proceedings, we conclude that the letters sent by the Department to homeowners were not written offers under the statute.
In Pierpont v. Lee County, 710 So.2d 958 (Fla.1998), the court considered whether a good faith estimate of value filed pursuant to section 74.031 constituted a written offer within the meaning of section 73.092. The court held that it did not, because the government was not bound by the good faith estimate. 710 So.2d at 960-61. It defined an offer as “an expression by a party of assent to certain definite terms, provided that the other party involved in the bargaining transaction will likewise express assent to the same terms.” Id. at 960. A good faith estimate of value did not bind the governmental agency which was free to argue for an amount higher or lower at the jury trial. Id. at 960-61.
An offer which is subject to contingencies and does not obligate the government to purchase the property is not a written offer within the meaning of section 73.092. Pompano Beach, 82 So.3d at 1037 (holding that unexecuted contract to purchase property proposed by redevelopment agency, which was subject to contingencies of commission approval and appropriation of funds, was not a written offer within meaning of section 73.092(1)). In contrast, an offer which is definite and contains no contingencies may be a written offer within the meaning of section 73.092(1). See JEA v. Williams, 978 So.2d 842, 846 (Fla. 1st DCA 2008).
The letters sent by the Department do not constitute written offers within the meaning of the foregoing cases. It is important to understand that the letters were sent after the homeowners’ citrus trees were destroyed and removed. The Department was not offering to compensate the homeowners in exchange for their transfer of property to the state, as would be the case for a presuit offer in an eminent domain case. Because the trees were already destroyed, the only right the homeowners could relinquish as a result of an offer of compensation was their right to claim additional compensation pursuant to an action in inverse condemnation or pursuant to statutes. Nothing in either letter indicates that the Department was offering compensation in exchange for the relinquishment of this right. In fact, the letter offering the cash payments pursuant to section 581.1845, Florida Statute (2001) explained that the homeowners were not giving up their rights to pursue inverse condemnation.
The letters made no mention of the homeowners’ rights to attorney’s fees and the limitations of section 73.092. This would have alerted them that their right to attorney’s fees would be limited to the *256 benefits obtained, as section 73.015 requires the condemning authority to advise the property owner. See § 73.015(l)(a)4., Fla. Stat. (2009). Thus, the letters did not constitute an expression of specific terms to which the other party could agree, because the letters were deficient for failure to explain the homeowners’ rights under section 73.092(1) and (2).
Finally, it is abundantly clear from the histoiy of this case and the evidence presented that the Department never intended these to be “offers” until it sought to use them to reduce attorney’s fees. The Department adamantly, and for two decades, claimed that it had not taken property for which compensation was required. Deputy Commissioner Meyers testified that the compensation was simply a token allowed by the Legislature as a showing of “respect” to homeowners who lost trees. It appears that the letters were carefully worded so that the Department would not imply that it owed compensation for the value of the trees. For all of these reasons, we conclude, as did the trial court, that the letters did not constitute written offers pursuant to section 73.092(1).
Where there are no written offers, as there were none in this inverse condemnation proceeding, attorney’s fees must be based upon the multi-factor analysis of section 73.092(2). See City of N. Miami Beach v. Reed, 863 So.2d 351, 353-54 (Fla. 3d DCA 2003). The trial court properly applied that analysis in setting the award of attorney’s fees.

Application of Rules of Professional Conduct

Alternatively, the Department claims that the award of attorney’s fees exceeds what is allowed in contingent fee cases under Florida Rule of Professional Conduct 4-1.5(f) which should provide a cap on any fee with a contingency factor. It ignores, however, Rule 4-1.5(e), which states that: “The fact that a contract may not be in accord with these rules is an issue between the attorney and client and a matter of professional ethics, but is not the proper basis for an action or defense by an opposing party when fee-shifting litigation is involved.”
What the Department would have us hold is that any fee based upon a fee-shifting statute which exceeds the contingent fee schedule contained in the rules of professional responsibility is per se excessive. We reject this approach. While the contingent fee schedule of the rule may be one factor that the trial court could consider under section 73.092(2)(f) to illustrate comparable fees, it is but one of several factors to establish a reasonable fee. The statute provides no cap, and we will not impose one, particularly in this case where the size of the fee awarded to class counsel was the result of the Department’s litigation strategy and desire to “go to the mats,” as the trial court described.[2] This argument is meritless.

Fee Contract Provision Not Controlling

Also without merit is the Department’s contention that class counsel’s fee must be limited to the percentage stated in a fee contract between one member of the class and his counsel, who participated in the proceedings but was not lead counsel. That fee provision stated: “In the event [Lytal, Reiter] are successful in asserting class action claims, [the firm] will seek a reasonable fee as determined by the court. Fees customarily awarded by Courts in *257 cases such as this are usually in the range of 25% to 30%.” Based upon this provision, the Department argues that the fee award for all class counsel should be limited to 30% of the judgment.
We reject the Department’s reasoning. First, the contract with one plaintiff and one counsel does not bind the rest of the class counsel to its terms. Second, the contractual provision does not limit the attorney to 30%. It is not an agreement to charge that amount but a description of what a customary fee might be. Third, it is abundantly clear through case law that where the fee agreement with a client in a fee-shifting case contains alternative means of calculating a fee — one based on a percentage of the recovery or the other a fee set by the trial court — the agreement permits the trial court to set a reasonable fee higher than the percentage contained in the contract. See Kaufman v. MacDonald, 557 So.2d 572, 573 (Fla.1990). The supreme court has recently reiterated its approval of such alternative fee clauses and the trial court’s ability to exceed the hourly rate or percentage of recovery limit contained in the contract where the fee is reasonable. See First Baptist Church of Cape Coral, Fla., Inc. v. Compass Constr., Inc., 115 So.3d 978, 982 (Fla.2013). The trial court correctly rejected the Department’s erroneous construction of the law.

Amount of Fees and Use of Current Hourly Rate

We review the determination of the amount of attorney’s fees for an abuse of discretion. See Daddono v. Miele, 69 So.3d 320, 324 (Fla. 4th DCA 2011); G.H. Johnson Constr. Co. v. A.P.G. Elec., Inc., 656 So.2d 566, 566 (Fla. 2d DCA 1995). The trial court thoroughly analyzed the evidence and the statutory factors. It determined that it should use class counsel’s current hourly rates, rather than the historic hourly rates over the decade of this litigation, and its reasoning is well supported in the record.
The court relied on Perdue v. Kenny A., 559 U.S. 542, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010), and Gray v. Bostic, 613 F.3d 1035 (11th Cir.2010), for the proposition that an enhancement of an attorney’s fee could be appropriate where an attorney’s performance involves an exceptional delay in the payment of fees or where the attorney assumes costs in the face of unanticipated delay, particularly where the delay is unjustifiably caused by the defense. Perdue, 559 U.S. at 556, 130 S.Ct. 1662. The delay could be compensated either by using current rates for the entire fee calculation, or by using the rates in place when the work was performed and adjusting it to present value. Id. The trial court took the former approach and documented the extraordinary delay over ten years, some as a result of judicial delay but much caused by the Department’s litigation tactics and its “win at any cost” strategy, which resulted in multiple unnecessary appeals and proceedings. The trial court acted well within its discretion in determining the hours and hourly rates for class counsel.

Fees for Work on Patchen I and Patchen II

We reverse only one portion of the attorney’s fees award. On behalf of the class, counsel appeared in the Third District as amici in Patchen I to argue for reversal of the trial court’s ruling. A defeat in Patchen I would have doomed a recovery in this case. As part of the fee award in this case, the trial court included time spent in representing the class in Patchen I. The trial court based its inclusion on Appalachian, Inc. v. Ackmann, 507 So.2d 150, 153-54 (Fla. 2d DCA 1987), in which the court affirmed the inclusion of fees for an appearance as amici in a related case where the issue was essential to the prosecution of the action in which fees *258 were being sought. In this case, class counsel’s representation of the class’s interest in Patehen I was essential to the prosecution of the inverse condemnation in this case.
Appalachian, however, does not provide authority for the Department’s liability for fees that counsel incurred in Patehen II, the supreme court proceeding. In the supreme court, counsel represented the Patchens, not the class. Therefore, the fees were not incurred by the class members and should not be imposed upon the Department in this case. Moreover, without authorization from the appellate court, a trial court has no authority to assess attorney’s fees on appeal.[3] See, e.g., Foley v. Fleet, 652 So.2d 962, 968-64 (Fla. 4th DCA 1995). Counsel should have sought fees in Patehen II in the supreme court. We therefore reverse for the trial court to delete from the overall fee the amount attributable to work on Patehen II. At oral argument, class counsel requested that these fees be assessed against the common fund. On remand, the trial court shall consider the propriety of such assessment.

Fee for Expert Witness Testifying as to Reasonableness of Fees

Finally, we reverse the assessment against the Department of the fee of the attorney expert witness who testified as to the reasonableness of the fees. Our supreme court held in State Farm, Fire and Casualty Company v. Palma, 629 So.2d 830, 838-34 (Fla.1993), that an insurer was not hable for attorney’s fees for the time spent litigating the amount of attorney’s fees, where fees were authorized pursuant to section 627.428, Florida Statutes (1983), because such fees inured solely to the benefit of the attorney and not to the insured. Palma has been applied to attorney’s fees awarded in condemnation proceedings under section 73.091, Florida Statutes (1993). In Department of Transportation v. Robbins, 700 So.2d 782, 785 (Fla. 5th DCA 1997), the court held that an attorney was not entitled to fees for litigating the amount of fees, nor for the fee of the expert witness called to testify to the amount of a reasonable fee. Such fees and costs were not compensable because the landowner had no interest in the amount of the fee, the benefit of which inures solely to its attorney. Id.; see also State Dep’t of Transp. v. Patel, 768 So.2d 1173, 1175 (Fla. 2d DCA 2000); Seminole Cnty. v. Boyle Inv. Co., 719 So.2d 1004, 1004 (Fla. 5th DCA 1998) (error to award expert fee for testifying regarding amount of fee).
Section 73.091(1) supports this view, as it allows fees incurred “in defense of the proceeding.” Fees and costs incurred to obtain fees are not fees for defending a condemnation proceeding (or litigating an inverse condemnation proceeding). The statute does not permit the award of fees on fees or the fee of the expert who testifies as to the amount of a reasonable fee. Thus, we reverse the award of the expert fee.
For the foregoing reasons, we affirm the award of attorney’s fees except for those fees incurred in the supreme court in connection with representation in Patehen II. We reverse the award of the expert witness fee. We remand for the trial court to correct the award in accordance with this opinion.
CIKLIN and GERBER, JJ., concur.

. The Department also moved for attorney’s fees, claiming that it was the prevailing party. The trial court denied its motion, and this court affirmed on appeal. Fla. Dep’t of Agric. & Consumer Servs. v. Cox, 54 So.3d 1026, 1026-27 (Fla. 4th DCA 2011).

. The Department’s reliance on Solid Waste Authority of Palm Beach County v. Parker, 622 So.2d 1010 (Fla. 4th DCA 1993), is completely inapposite. It does not stand for the proposition that any fee in excess of the fees schedule in the rule of professional responsibility is excessive. Further, that case was decided under a prior version of the statute, markedly different than the version applicable in this case.

. This would not apply to fees for appearing as amicus, as there is no provision for the award of fees for amicus briefs.